145 N.W.2d 59 (1966)
In re TRUST created under last Will and Testament of Henry H. TUFFORD, deceased.
Robert J. TUFFORD et al., beneficiaries, Appellants,
v.
NORTHWESTERN NATIONAL BANK, trustee, Respondent.
No. 39960.
Supreme Court of Minnesota.
September 2, 1966.
*61 Wolner & Haglund, Wayzata, for appellants.
Faegre & Benson, and John E. Harris, Minneapolis, for respondent.

OPINION
SHERAN, Justice.
Appeal from an order of the district court denying the beneficiaries' request to terminate a trust, construing its provisions, and instructing the trustee.[1]
The trust was created by the will of Henry H. Tufford, who died on January 2, 1962. The will, made on December 9, 1958, provided in part as follows:
"EIGHTH: The rest, residue and remainder of my estate, I give, devise and bequeath unto my trustee hereinafter named to be held for the benefit of Robert J. Tufford, my son, and Mrs. Elwin Pierce, nee Bernice E. Tufford, my daughter, and not for the trustee's own use and benefit, but for the following purposes, to-wit:
"1. The trustee shall hold and manage the property as a trust fund, with power to sell, exchange, invest, mortgage, or otherwise dispose of property as he may deem proper. The trustee may hold any property in its own name and in the name of its nominee with or without *62 disclosure of a fiduciary relationship, but the trustee shall be responsible for all acts of such nominee affecting the property.
"Upon my decease, the trustee shall make yearly payments from the principal and income of the trust to each of my children above named up to and including the amount of $2,000.00. The trustee shall have no discretionary power to pay any greater amounts than the amount above stated to either of my children under any circumstances, or conditions. The trustee shall have the power to terminate the trust where in its sole discretion, the existence of the trust is neither justifiable nor practical under the circumstances.
"NINTH: I hereby nominate and appoint the Northwestern National Bank and Trust Company of Minneapolis to be my trustee under the trust herein created."
The will was admitted to probate and the decree of distribution of the probate court entered on April 13, 1964, directed that the residue of the estate be transferred to the Northwestern National Bank and Trust Company, to be held under the terms of the testamentary trust.
The trustee obtained confirmation of its appointment by an order of the district court. On April 23, 1964, it received the residuary assets from the estate, subject to state inheritance taxes which had not been paid by the executor. These assets, valued at $56,729.63, consisted of cash, Series E government bonds, and a debt owed to the estate by Robert J. Tufford.
During April, May, and June 1964, the beneficiaries made requests to the trustee to terminate the trust and distribute the corpus. On June 12, 1964, they petitioned the district court[2] for an order terminating the trust or, in the alternative, compelling the trustee to distribute the past-due annual stipends and to establish separate accounts for each beneficiary. The beneficiaries also asked for construction of the trust instrument.
The petition was supported by two affidavits of Robert J. Tufford asserting that the sole purpose for the trust was to keep the property out of the reach of Robert's wife and the beneficiaries' stepfather. It appears that the stepfather, Pernie Crofoot, had married the mother of the beneficiaries after she had divorced the testator and that Robert's wife was a niece of Pernie Crofoot. The affidavits further revealed that Pernie Crofoot had died about eleven months before the testator's death and that Robert had been divorced from his wife shortly after the testator's death, the divorce proceedings having been initiated at least eight months before testator's death. On this factual basis, the beneficiaries claim that no material purpose remains for the continuation of the trust.
The district court ordered the trustee to distribute the past-due annual stipends and thereafter to make such distributions on January 2 of each subsequent year. It denied without prejudice all other relief requested by the beneficiaries because of lack of notice to possible contingent beneficiaries.
The trustee thereafter distributed to each beneficiary $5,304.87, being the past-due annual stipends for 3 years less each beneficiary's share of inheritance taxes.[3] The trustee failed to distribute the current stipend on January 2, 1965. On January 20, 1965, the beneficiaries again petitioned the district court, renewing the prior motion and requesting that the trustee be found in contempt for failing to obey the court's previous order. At the hearing on this petition the beneficiaries submitted written *63 consents to the termination of the trust by all of their children except Garrie Tufford, Robert's adult son. There is no indication of consent by a guardian ad litem appointed by the court to represent the infant children and grandchildren of Robert and Bernice.
The trial court found that "pursuant to" the earlier order, the trustee paid beneficiaries the amount of the past-due stipends less the trust's share of the inheritance taxes.
The order from which this appeal is taken provides:
"1. That the trustee shall on or about January 2nd of each year following pay to Robert J. Tufford and Bernice Pierce each the sum of $2,000.00 so long as there is sufficient funds in the trust estate to pay same.
"2. That the sum of $1,190.00 owed by Robert J. Tufford to the estate shall be deducted from the next payment of $2,000.00 due him under this Order.
"3. That upon the death of one of the beneficiaries of said trust, the sum of money remaining in said trust shall be held by the trustee for the benefit of the surviving beneficiary, and that the trustee shall pay to said surviving beneficiary the sum of $2,000.00 on or about January 2nd of each year so long as there are sufficient funds remaining in the trust to do so.
"4. That upon the death of the surviving beneficiary the monies left in the trust fund shall be equally divided and paid to the estate of each deceased beneficiary.
"5. That the motion for holding the trustee in contempt of court is denied.
"6. That the motion to direct the trustee to resign and disburse all proceeds of the trust over to Robert J. Tufford and Bernice Pierce is denied.
"7. That the motion to order the trustee to establish separate trust accounts for each of the beneficiaries of the trust is denied.
"8. That the attorneys for the petitioners shall be awarded the sum of $1,000.00 for attorney's fees.
"9. That the attorneys for the trustee-respondent shall be awarded the sum of $1,000.00 for attorney's fees.
"10. That the attorney for the guardian ad litem shall be awarded the sum of $150.00 for attorney's fees."
The beneficiaries contend that:
(1) The trust should be terminated since there is no material purpose to be served by its continuance.
(2) If the trust is to be continued, the trial court's construction of it was erroneous in (a) allowing the trustee to charge the inheritance taxes against the annual stipends; (b) allowing the trustee to charge Robert's debt against his stipend; (c) failing to require separate accounts; and (d) determining that the entire trust continues until the death of the surviving beneficiary.
(3) The trustee should have been held in contempt because of dilatory, obstructive, indifferent, and unsympathetic conduct toward the beneficiaries.

TERMINATION
The beneficiaries, in support of termination, urge: (1) It is an established principle of decisional law that if all beneficiaries consent and none is under any incapacity, they can compel the termination of the trust before its natural expiration unless the continuance of the trust is necessary to carry out some material purpose for its creation.[4] (2) The trustee is given *64 the express power here "to terminate the trust where in its sole discretion, the existence of the trust is neither justifiable nor practical under the circumstances." (3) Minn.St. 501.40 provides: "When the purposes for which an express trust is created cease, the estate of the trustee shall also cease."
Each of these bases requires a showing that there is no material purpose to be served by the continuation of the trust. In attempting to establish a basis for termination, the beneficiaries have the burden of proof.[5]
The object of the inquiry is to determine the testator's intent, which is to be gathered from the whole instrument and all reasonable inferences that may be drawn from it.[6] Where the intent of the testator is not expressed or inferable from the instrument, parol evidence may sometimes be admissible to clear up the ambiguity.[7]
The trustee contends that the testator's purpose in establishing this trust was to provide prudent management of the funds and to protect the beneficiaries from their own indiscretion. It opposes termination.
In some situations, the person seeking to terminate the trust is aided in meeting his burden of proof by inferences drawn from the trust instrument. Thus, in Simmons v. Northwestern Trust Co., 136 Minn. 357, 162 N.W. 450, L.R.A.1917F, 736, plaintiff was assisted by the inference that if a trust is created for successive beneficiaries, in the absence of circumstances indicating a further purpose, the only purpose in giving plaintiff only a life interest is to preserve the remainderman's interest.[8] Therefore, when the life tenant, after testator's death, acquired the remainder interest, which occurrence was presumably not contemplated by testator, she became entitled to termination of the trust and immediate possession of the property.
However, a quite different situation is presented where the trust gives non-successive beneficiaries the entire interest subject only to restriction as to manner of enjoyment.[9] In such a situation no person possesses a remainder to be protected, or which can be acquired as to create a situation presumably not in testator's contemplation. In such circumstances, the logical inference is that settlor's purpose was to place the res beyond the beneficiaries' control during their lives. The trial court found that this was the material purpose of the trust here considered and rightly held that this was a proper purpose, relying upon Estate of Easterday, 45 Cal.App. 2d 598, 114 P.2d 669.[10] In view of the fact that the beneficiaries had the burden of proving a different purpose and that their evidence came entirely from interested parties,[11] *65 the trial court is affirmed on this issue.[12]

CONSTRUCTION
The trial court found that Robert and Bernice were entitled to the entire beneficial interest in the trust, subject only to a postponement of enjoyment by reason of the provision that they were not to receive more than $2,000 from the trust property in any given year.
An alternative construction of the testamentary trust would be to say that it creates a life interest only in Robert and Bernice with no disposition made of the remaining corpus. The consequence of this would be that the corpus would revert on the death of the surviving beneficiary to the testator's estate.[13]
The trial court's construction is accepted for these reasons:
(a) The terms of the will devise the entire residue to the trustee for the benefit of Robert and Bernice. No other beneficiaries are mentioned.[14]
(b) Where there is a gift of income without an express or implied limitation as to time, an intent to give the entire beneficial interest can be inferred.[15]
(c) There are no residuary legatees other than the trustee. Application of the reversion concept would require that the remaining corpus pass from the testator's estate as though he were intestate. That this was not his intention appears from his failure to make any provision for the return of the remainder to his estate in light of the presumption against an intent that part of one's property pass by intestacy.
(1) Disposition at death of one beneficiary. The trust does not contain any directions as to what disposition should be made of the property on the death of one of the beneficiaries.
The trial court determined that the primary intent of the testator was to provide the annual stipend to each beneficiary during his respective life as long as the corpus lasted and that any intent to benefit either beneficiary's estate was secondary. It thus reasoned that a construction which would enhance the trust's ability to continue such payments should be preferred to one which would more quickly terminate the payments only to benefit a deceased beneficiary's estate. It therefore ruled that upon the death of one beneficiary, the entire corpus would remain intact and the annual payments continue to the survivor; that then, upon the death of the survivor, the remainder would *66 go in equal shares to the estate of each beneficiary. We concur in this interpretation.[16]
(2) Separate accounts. The trust does not authorize or direct the creation of separate accounts. The construction we have just given the trust militates against the use of separate accounts. Moreover, the beneficiaries have cited no authorities, and none have been found, holding that the trustee can be compelled to create separate accounts where several beneficiaries are given an equal interest in the entire trust property.
(3) Inheritance taxes. The trustee deducted from each beneficiary's annual stipend his share of the inheritance taxes. The trust instrument contains no provision as to manner of payment of taxes, and appellants maintain there was no basis for the trustee's action.
The Minnesota inheritance tax[17] is imposed upon the privilege of receiving property.[18] In terms, it accrues when a recipient "becomes beneficially entitled, in possession or expectancy, to any property or the income thereof,"[19] and the measure of it is the value of what the beneficiary receives.[20] Although it is the duty of the representative or trustee to either deduct the tax or collect the tax from the beneficiary before transferring property to him,[21] the tax is not imposed upon the trustee since the trustee has no beneficial interest in the property.[22] In the instant case, the taxes were not assessed until after the fund was turned over by the executor to the trustee, so the trustee rather than the executor remitted payment. But whether the trustee remits upon the tax itself or merely receives a fund decreased by the amount of taxes paid, unless a different method of payment is indicated by the trust instrument, it would appear to be the trustee's duty to apportion the burden of the taxes among the beneficiaries so that each is charged the amount for which he is responsible.
There are five possible methods of apportioning the tax in this situation:
(1) Separate accounts could be used and the corpus of each charged with the tax. (This is appellants' suggestion.)
(2) The tax could be paid out of the corpus.
(3) The tax could be paid out of the corpus only to the extent that one beneficiary's tax is not higher than the other's, with the excess charged against a stipend payment to the beneficiary with the higher tax.
(4) Only the tax attributable to a payment could be deducted from that payment.
(5) The entire tax for each beneficiary could be charged against a stipend payment to that beneficiary. (This is the method the trustee used and the trial court approved.)
Alternative (1) is disposed of by our holding that appellants are not entitled to establishment of separate accounts.
Alternative (2) at first blush appears desirable since it would result in the beneficiaries *67 receiving the full stipend payment each year which seems to have been quite important to settlor. However, this method could easily result in an inequity since if one beneficiary would die before the fund is exhausted but the other would survive exhaustion of it, the practical result would be that the survivor would bear the entire tax rather than just his portion.[23] Moreover, if the tax assessment were more for one beneficiary than for the other, there would be inequality even if both beneficiaries survived exhaustion of the fund, unless adjustment were made in the final payment.
Alternative (3) has the same defects as alternative (2).
The fourth alternative also has some appeal. Such a resolution would clearly be the correct one if the tax did not accrue until the beneficiary came into possession of the property.[24] But under the statute as it now stands, the amount upon which each beneficiary is taxed in situations of the present type is determined in advance by use of mortality tables,[25] so that the tax he actually owes may differ from what the tax would be if computed upon the amount actually received from time to time. There seems to be no sound reason why each beneficiary should not be charged with the tax he actually owes.
The fifth alternative appears to be the only one which will accomplish this. It might be asserted that this runs counter to the testator's intention that each beneficiary receive his full stipend each year. In our view this inference of intent is not sufficiently strong to overcome the considerations making it a reasonable assumption that each beneficiary should bear the burden of the tax occurring because of the right to receive the annual stipends.
Since the choice of the fifth alternative is based upon possible inequity between the beneficiaries, the beneficiaries might feel that they should be allowed to waive their complaints to any such inequity, and that they have done so by objecting to deduction of the taxes from their stipend payments. However, their request was for payment from the corpus of each of two accounts, not for payment from a single corpus. In light of the testator's desire that the annual stipend payment be forthcoming each year, it seems reasonable that the beneficiaries should be allowed to demand that taxes be paid out of the corpus, if they are willing to overlook any inequities that might occur as between themselves. Therefore, although the trial court is affirmed on this point because of the present posture of this case, it is open to the beneficiaries to make application to that court within 30 days of the filing of this opinion to have the trial court's order reopened on this matter. Such application should be accompanied by the consent of each beneficiary to a deduction from corpus for the inheritance taxes of the other beneficiary. The purpose of such application would be limited to the trial court's modification of its order to direct that payment of the taxes be charged to corpus, and that trustee reimburse beneficiaries from the corpus for the amounts withheld from their stipend payments for inheritance taxes.
(4) Robert's debt. There is little question but what Robert's debt must be charged against his annual stipend so long as separate accounts are not maintained. If the trustee deducted this amount from the corpus, the interest of Bernice would also *68 be diminished. If separate accounts were maintained, it might be more appropriate to charge the debt against Robert's remainder interest than against his annual stipend. The trust does not authorize any charges against the stipend and evidences, as the trial court found, some intent on the part of the testator to assure that this stipend will be forthcoming.

CONTEMPT OF THE TRUSTEE
The beneficiaries contend that the trustee has disobeyed the initial order of the district court requiring the distribution of the annual stipends. It does not appear that the actions of the trustee warrant a finding that it is in contempt.
The trustee's decisions regarding charges against the annual stipend do not indicate a breach of trust. The trial court was well within its discretion in determining that the exercise of its contempt powers was not necessary to the satisfactory enforcement of its order.

CONCLUSION
Although we agree that the record supports the finding of the trial court that the trustee cannot be compelled to terminate the trust, we are satisfied that the trustee will promptly exercise the discretion conferred upon it by the will to terminate if satisfied that the principal purpose of the testator in creating the trust has been abated by a change of circumstances occurring since the will was executed. We do not attribute to the corporate trustee a disposition to preserve the trust in order to further its own interests. We feel justified in assuming that if the facts are as the beneficiaries claim, the expense and frustration generated by this controversy will be brought to an end by voluntary action on the part of the trustee.
Affirmed with leave given the beneficiaries to properly consent and apply to the trial court within 30 days for modification of its order to direct that payment of the inheritance taxes be charged against corpus.
KNUTSON, C. J., took no part in the consideration or decision of this case.
NOTES
[1] This order is appealable under Minn.St. 605.09 as a "final order or judgment affecting a substantial right made in a special proceeding." See, In re Trusteeship Under Will of Rosenfeldt, 184 Minn. 303, 238 N.W. 687.
[2] Proceeding under the continuing jurisdiction of that court by virtue of its confirmation of the trustee's appointment under Minn.St. 501.33.
[3] The taxes were subsequently redetermined, and $170.93 remitted to Robert and $179.07 to Bernice.
[4] See, Restatement, Trusts (2d) § 337; Simmons v. Northwestern Trust Co., 136 Minn. 357, 162 N.W. 450, L.R.A.1917F, 736; Blacque v. Kalman, 225 Minn. 258, 30 N.W.2d 599.
[5] See, Cazallis v. Ingraham, 119 Me. 240, 110 A. 359; Blake v. Johnson, 180 Wis. 485, 193 N.W. 388; Sherman v. Hibernia Sav. & Loan Soc., 129 Cal.App.Supp. 795, 20 P.2d 138.
[6] See, In re Trust Created by Moulton, 233 Minn. 286, 46 N.W.2d 667, 24 A.L.R. 2d 1092; Blacque v. Kalman, supra.
[7] See, Restatement, Trusts (2d) § 337, comment e; In re Declaration of Trust by Bush, 249 Minn. 36, 81 N.W.2d 615, 82 N.W.2d 221. But cf. Simmons v. Northwestern Trust Co., 136 Minn. 357, 162 N.W. 450, L.R.A.1917F, 736, where doubt was expressed as to the propriety of proving purpose by extrinsic evidence.
[8] See, Restatement, Trusts (2d) § 337, comment f.
[9] See, Restatement, Trusts (2d) § 337, comment j.
[10] This case held that a trust should not be terminated as to a life tenant's interest despite the life tenant's acquiring the remainder and absence of a spendthrift provision where there was evidence that the testator's purpose was to provide an adequate income for his son for life and also to keep the corpus out of the control of his son.
[11] It should also be noted that the trial court could reasonably have found that testator must have learned of Pernie Crofoot's death and Robert's impending divorce, and considered these facts in conjunction with the fact that testator made no codicil to his will. See, Blacque v. Kalman, supra.
[12] It is not necessary to pass upon whether a spendthrift trust was created here because the rules here stated apply regardless of whether such a trust is involved. See, Restatement, Trusts (2d) § 337, comment k; Estate of Easterday, 45 Cal.App.2d 598, 114 P.2d 669; Adams v. Link, 145 Conn. 634, 145 A.2d 753; Claflin v. Claflin, 149 Mass. 19, 20 N.E. 454, 3 L.R.A. 370.
[13] Minn.St. 501.19 provides: "When an express trust is created, every estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to the person creating the trust, or his heirs, as a legal estate."
[14] See, 2 Scott, Trusts (2 ed.) § 128.2, p. 935: "If a legacy is given to a trustee for the use of a named beneficiary, the inference that he is to take the entire beneficial interest is not necessarily rebutted by a further provision that the trustee shall pay the income to him, or that the income shall be used for his support, or that the trustee may use the principal as far as necessary for his support."
[15] 2 Scott, Trusts (2 ed.) § 128.2, p. 932; Bogert, Trusts and Trustees (2 ed.) § 182, p. 229.
[16] An interesting analogy is the rule adopted by some courts that cross remainders of the income interest are to be implied when a trust res has two or more life tenants. See, Restatement, Trusts (2d) § 143; Hartford-Connecticut Trust Co. v. Gowdy, 141 Conn. 546, 107 A.2d 409; Kiesling v. White, 411 Ill. 493, 104 N.E. 2d 291; Wachovia Bank & Trust Co. v. Miller, 223 N.C. 1, 25 S.E.2d 177. No view is intimated as to the validity in Minnesota of the doctrine of implied cross remainders.
[17] Minn.St. c. 291.
[18] In re Estate of Bradley, 241 Minn. 394, 63 N.W.2d 374.
[19] Minn.St. 291.01, subd. 2.
[20] Sevcik v. Com'r of Taxation, 257 Minn. 92, 100 N.W.2d 678; In re Estate of Bowlin, 189 Minn. 196, 248 N.W. 741; State ex rel. Hilton v. Probate Court, 143 Minn. 77, 172 N.W. 902.
[21] Minn.St. 291.12.
[22] State ex rel. Hale v. Probate Court, 100 Minn. 192, 110 N.W. 865.
[23] Admittedly, in the instant case the survivor's feelings of being wronged would be greatly assuaged by the fact that even with the burden of the other beneficiary's taxes, he receives more than the other beneficiary since each beneficiary's tax equals only about one-fourth of an annual stipend payment.
[24] See State ex rel. Hale v. Probate Court, supra, which was decided when the statute did so provide in situations where payment depended upon uncertain contingencies.
[25] See, Currer, Minnesota Inheritance Tax Procedure, 23 Minn.L.Rev. 120, 125 to 127.