**Hugh PLOOG, Appellant,**

v.

**Richard OGILVIE, trustee in bankruptcy for Chicago, Milwaukee, St. Paul and Pacific Railway Company, Appellant,**

**Donald Litin, d.b.a. Litin Paper Company, Respondent.**

**Nos. 51415, 51460.**

Supreme Court of Minnesota.

Aug. 14, 1981.

Rehearing Denied Sept. 23, 1981.

Yaeger & Yaeger, William G. Jungbauer, Minneapolis, for Ploog.

Rider, Bennett, Egan & Arundel and Scott K. Goldsmith, Minneapolis, for Ogilvie.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and M. J. Coyne, Minneapolis, for Litin.

## PETERSON, Justice.

Plaintiff Hugh Ploog brought this action against defendants Richard Ogilvie, trustee in bankruptcy for the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (the railroad), and Donald Litin, d.b.a. Litin Paper Company (Litin), for damages for personal injuries he sustained while removing a pallet from the sidetrack adjacent to Litin's freight dock. Each defendant crossclaimed for indemnity or contribution from the other. The jury found plaintiff entitled to damages of $140,000. The trial court directed entry of judgment for plaintiff in that amount and awarded Litin indemnity from the railroad. Plaintiff and the railroad appeal from the trial court's order denying their post-trial motions and from the judgment. We affirm in part and reverse in part.

The railroad is a Wisconsin corporation that operates railway lines in Minnesota and other states. Plaintiff was employed by the railroad as a switchman. Litin is a sole proprietorship owned by Donald Litin and engaged in the business of selling paper products to industries.

At all times relevant to this action Litin's plant was located on South Third Street in Minneapolis. The plant was on a block bisected by "Fish Alley," an alley through which the railroad's main switching track runs. Sidetracks branch off the main switching track to serve the industries adjacent to Fish Alley.

On July 25, 1976, a Sunday, plaintiff was working on a crew spotting railroad cars in Fish Alley. Two wooden pallets lay across the sidetrack by Litin's freight dock; many more were stacked on the freight dock. The crew foreman directed plaintiff to remove the pallets from the sidetrack to clear the way for freight cars. Plaintiff lifted each pallet onto the freight dock. While thrusting the second pallet on top of the first, he felt "a little catch in his back."

In the ensuing months plaintiff experienced severe back and leg pain. His condition was eventually diagnosed as degenerative disc disease with a herniated intervertebral disc producing nerve root compression. Although plaintiff has responded well to treatment, he is unable to return to his former occupation. Its physical demands, in his physician's opinion, would likely result in additional trauma.

In October 1978 plaintiff commenced this action against Litin and the railroad alleging his injury was caused by their negligence and seeking compensatory damages. Plaintiff's claim against the railroad was based upon the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1976).[1] Litin and the railroad denied liability to plaintiff and filed crossclaims against each other for indemnity or contribution.

The crossclaims are based upon three contracts that together comprise the track agreement between Litin and the railroad. The first of these contracts was executed on October 24, 1938, by the railroad and, *inter alia*, Allis Chalmers Manufacturing Company, Litin's predecessor in interest. In the first contract Allis Chalmers Manufacturing Company agreed to furnish the railroad with the right-of-way necessary for the sidetrack. The railroad agreed to construct the sidetrack and to "maintain, repair and renew" it. The contract contains a clearance provision:

> The Industry [the tenant of Allis Chalmers Manufacturing Company] shall not

---

1. 45 U.S.C. § 51 (1976), provides:

Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

place or permit to be placed, or to remain, any material, equipment, structure, pole, or other obstacle or obstruction, within 8.5 feet, on straight track, or 9.5 feet on curved track, laterally of the center, or within twenty-five (25) feet vertically from the top of either rail of said track; nor shall it make or permit to be made, or to remain, any excavation within six (6) feet laterally from the nearest rail of said track.

The contract also contains an indemnity and contribution provision:

The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employes, or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

The second contract was executed by the same parties on April 13, 1939, and allows the tenant to maintain reduced clearances at specified locations along the sidetrack. The third contract was executed by the railroad and Litin on December 24, 1971. It recites that Litin "has succeeded to all the right, title and interest of Allis Chalmers Manufacturing Company in and to the said agreements of October 24, 1938 and April 13, 1939" and further provides:

[Litin] hereby certifies that it is familiar and conversant with the contents of said agreements of October 24, 1938 and April 13, 1939, and agrees to assume, be bound and governed by all of the terms, conditions, stipulations, releases and acquittances in said agreements contained, with the same force and effect as though it had originally been the party with whom the agreements were made.

Prior to trial plaintiff and the railroad read a settlement agreement into the record. The apparent purpose of the settlement agreement was to provide plaintiff with a minimum recovery of $75,000 and to limit the railroad's payment to plaintiff to that amount. The railroad agreed to pay plaintiff $75,000 in exchange for plaintiff's relinquishing all claims against it arising out of the incident of July 25, 1976. Plaintiff agreed that if he recovered more than $75,000 from Litin, alone or together with the railroad, and if Litin was held entitled to contribution or indemnity from the railroad, then plaintiff would pay the railroad the amount awarded as contribution or indemnity provided he received a net recovery of at least $75,000. In no event was plaintiff to receive from Litin and the railroad a sum greater than the sum determined by the jury to be necessary to compensate plaintiff for his injury.

The matter was tried to a jury on August 20–24, 1979. Evidence adduced at trial disclosed that the sidetracks near many of the industrial freight docks on Fish Alley were littered with debris. Donald Litin testified that twice a week a railroad crew came through Fish Alley to clear the debris from the tracks. At the end of each working day Litin's employees were accustomed to remove from the track area anything of value to Litin in its business, including pallets. Donald Litin assumed this had been done on Friday, July 23, 1973, the last working day before the day on which plaintiff was injured. Plaintiff, Donald Litin and a switchman whom plaintiff called as a witness all testified they had never seen pallets lying on the tracks before.

The jury was informed of the fact of the settlement but not of the amount the railroad had agreed to pay plaintiff. The trial court declined to construe the track agreement before submitting the case to the jury. The trial court stated it would decide the question of the parties' rights to indemnity after receiving the benefit of the jury's verdict and reviewing the applicable law.

The jury returned a special verdict finding (1) that Litin was negligent and that its negligence was a direct cause of plaintiff's injuries; (2) that plaintiff's injuries resulted in whole or in part from conduct of the officers, agents or employees of the railroad; (3) that 60% of the causal fault was

attributable to Litin and 40% to the railroad; and (4) that $140,000 was the amount necessary to compensate plaintiff fairly for his injuries. By an order dated February 4, 1980, the trial court awarded plaintiff judgment against Litin and the railroad in the amount of $140,000. It further held Litin entitled to indemnity from the railroad for any sums Litin might pay in satisfying the judgment.

Plaintiff and the railroad each subsequently moved for judgment requiring Litin to indemnify the railroad or, in the alternative, a new trial. By an order dated April 29, 1980, the trial court denied the motions. Judgment for plaintiff was entered on May 27, 1980. This appeal followed.

■ 1. Plaintiff and the railroad contend the trial court erred in holding Litin entitled to common law indemnity from the railroad. A cotortfeasor who is causally negligent may not recover indemnity from another cotortfeasor. *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 366–68 (Minn.1977). The jury found Litin causally negligent. Therefore, plaintiff and the railroad argue, Litin is not entitled to indemnity from the railroad. Rather, the track agreement's indemnity and contribution provision applies and requires that Litin indemnify the railroad or, if the railroad was also causally negligent, that Litin and the railroad share equally the liability for plaintiff's damages.

The trial court found that plaintiff's removing the pallets from the sidetrack was an act of maintenance. Maintenance is an obligation of the railroad under the track agreement. For that reason, apparently, the trial court held the indemnity and contribution provision inapplicable and awarded Litin indemnity from the railroad.

■ Where the critical evidence is documentary, there is no need for us to defer to the trial court's assessment of its meaning. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–26, 243 N.W.2d 302, 305 (1976), *cert. denied, Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). We disagree with the trial court's conclusion that the track agreement makes removal of pallets from the sidetrack an obligation of the railroad. A track agreement, like other written contracts, must be construed as a whole in the light of its object, nature and purpose. *Missouri Pacific R. Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 905 (Mo.App. 1975). The railroad's undertaking to maintain the sidetrack cannot be read as imposing upon the railroad an obligation to remove pallets from the sidetrack unless the clearance provision of the track agreement is ignored.

The clearance provision provides that Litin "shall not place or permit to be placed, or to remain, any material, equipment, structure, pole, or other obstacle or obstruction" within a certain area surrounding the sidetrack. The pallets were equipment of a kind used by Litin in its business. Lying on the sidetrack, within the prohibited area, they could cause a train to derail and surely created an obstacle or obstruction. In our view, the clearance provision obligates Litin to keep pallets off the sidetrack.[2] That obligation, moreover, is exclusive. There is nothing in the track agreement to indicate that the clearance provision and the clause in which the railroad undertakes to "maintain, repair and renew" the sidetrack were intended to impose a joint obligation upon the parties. Furthermore, the specificity of the clearance provision and, in opposition, the general terms in which the railroad's undertaking is expressed, belie any such suggestion. The trial court therefore erred

2. Clearance provisions containing language identical or similar to that of the clearance provision in this case have been interpreted as prohibiting within a specified area a lumber rack, *Miller & Co. of Birmingham v. Louisville & N. R. Co.*, 328 F.2d 73 (5th Cir. 1964), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964); a 4' by 4' by 4' wooden trash box, *Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. Co.*, 199 F.2d 725 (8th Cir. 1952); a wood cart, *Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950); a bale of pulp, *Baker v. Kimberly-Clark Corp.*, 364 F.Supp. 63 (S.D.Ohio 1973); and fertilizer, *Atchison, T. & S. F. Ry. Co. v. Smith*, 563 S.W.2d 660 (Tex.Civ.App.1978).

in holding the indemnity and contribution provision inapplicable and in awarding Litin indemnity from the railroad.

2. The indemnity and contribution provision requires Litin "to indemnify and hold harmless [the railroad] for loss, damage or injury from any act or omission of [Litin], its employes, or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said track" and further provides that "if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."[3] In *Ford v. Chicago, M., St. P. & P. R. Co.*, 294 N.W.2d 844 (Minn.1980), we were presented with an indemnity and contribution provision identical to the provision at issue here. We stated that the indemnity clause was intended to indemnify the railroad for any act or omission of the industry and not to indemnify the railroad for its own negligence. *Id.* at 846. The jury in *Ford* had found both the railroad and the industry negligent; thus, an act or omission of the industry was not the only basis of the railroad's liability to the plaintiff. Accordingly, we held the contribution clause was applicable and entitled the railroad to recover from the industry an amount equal to one half their joint liability to the plaintiff.

The contribution clause is also applicable in the present case.[4] The jury found that 60% of plaintiff's damages were caused by Litin's negligence and 40% by conduct attributable to the railroad. The latter finding necessarily includes a finding that the railroad was negligent. Under FELA, a railroad's liability to an injured employee is based on negligence. 45 U.S.C. § 51 (1976). The finding was made upon the court's instruction that the railroad had a duty "to use reasonable care to provide its employees with a reasonably safe place in which to work" and is supported by the evidence that the crew foreman directed plaintiff to remove the pallets from the sidetrack.

The judgment of the trial court is affirmed insofar as it holds plaintiff entitled to recover $140,000 plus costs from Litin and the railroad. The judgment is reversed insofar as it holds Litin entitled to indemnity from the railroad. The matter is remanded, and the trial court is directed to enter judgment awarding Litin contribution from the railroad in an amount equal to one half their joint liability to plaintiff.

Affirmed in part, reversed in part and remanded with directions.

---

3. Indemnity may be awarded "[w]here there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 373, 104 N.W.2d 843, 848 (1960). Such contracts are enforceable unless they violate public policy. *See* Note, *Contribution and Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 5 Wm. Mitchell L.Rev. 109, 140 n.175 (1979).

4. We note that the comparative fault statute, Minn.Stat. § 604.01 (1980), is rendered inapplicable to this case by the contribution clause. Section 604.01 reveals no intent to negate the common law rule whereby parties may allocate liability by express contract. *See Ford v. Chicago, M., St. P. & P. R. Co.*, 294 N.W.2d at 847.