In the Matter of the Trust Established
Under Trust Agreement of Thomas A.
BORIGHT, Deceased.

No. CO–84–993.

Court of Appeals of Minnesota.

Dec. 24, 1984.

Review Granted March 7, 1985.

Theodore N. Treat, Jr., Efrain M. Padro, Peterson & Treat, P.A., Minneapolis, for appellant.

Martin H. Fisk, Briggs & Morgan, St. Paul, for respondent.

William J. Berens, Dorsey & Whitney, Minneapolis, for trustee.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge

Appellant Gutierrez, an income beneficiary, appealed the trial court's order granting respondent's motion to purchase an annuity and terminate the trust. We reverse.

## FACTS

Thomas A. Boright entered into a revocable inter vivos trust agreement with the First National Bank of Minneapolis on July 27, 1977. He executed an amendment on March 31, 1979, which provided:

C. The remaining assets, after the foregoing payments, shall then constitute a single trust which shall be administered by the trustee as follows:

1. Beginning as of the date of the donor's death the trustee shall pay to the donor's son, THOMAS A. BO-RIGHT, JR., the sum of Twenty-Five Thousand ($25,000.) Dollars per year, from the net income of the trust estate or from the principal thereof to the extent that the net income is insufficient, in monthly installments during his lifetime.

2. Beginning as of the date of the donor's death the trustee shall pay to the donor's nurse and housekeeper, ANA R. GUTIERREZ, the sum of Twelve Thousand ($12,000.) Dollars per year, from the net income of the trust estate or from the principal thereof to the extent that the net income is insufficient, in monthly installments during her lifetime.

3. Any net income of the trust estate not paid out in any calendar year as above provided shall be accumulated by the trustee and added to the principal thereof.

4. Upon the death of any one of the above named beneficiaries his or her interest in said trust shall terminate and said sum which would otherwise have been paid to such deceased beneficiary shall be accumulated by the trustee and added to the principal thereof. Upon the death of the last survivor of the above named beneficiaries, said trust shall terminate and the entire remaining balance of said trust estate, including both principal and any remaining undistributed net income, shall be distributed outright as follows:

Twenty-five (25%) percent thereof to JOHN P. MATTOX III, if then living. If JOHN P. MATTOX III is not then living, the trustee shall distribute his share to the duly appointed personal representative of his estate.

Twenty-five (25%) percent thereof to MICHAEL T. MATTOX, if then living. If MICHAEL T. MATTOX is not then living, the trustee shall distribute his share to the duly appointed personal representative of his estate.

Twenty-five (25%) percent thereof in equal shares to ANNETTE DONLEVY, ALICE CHESTER, NANCY BRISBOIS, GLENNA CAPEL and PATRICIA FIORITO, if then living. If any of the five above named beneficiaries are not then living, the bequest to that person shall lapse and her share shall be added to the remaining balance of said trust estate.

Twenty-five (25%) percent thereof in equal shares to MINNESOTA MASONIC HOME, INCORPORATED; UNITED WAY OF MINNEAPOLIS; AMERICAN RED CROSS–MINNEAPOLIS AREA CHAPTER; BOY'S CLUBS OF MINNEAPOLIS; AMERICAN CANCER SOCIETY; MINNESOTA DIVISION, INC.; and AMERICAN HEART ASSOCIATION, MINNESOTA AFFILIATE, INCORPORATED. If any named organization is not in existence at the time of distribution, that organization's share shall lapse and be divided equally among the remaining existing organizations.

Boright died on August 20, 1979, the trust became irrevocable, and the First National Bank of Minneapolis was confirmed as trustee by an order dated September 14, 1979.

After the donor's death, his son, Thomas A. Boright, Jr., contested the validity of the trust agreement in Hennepin County probate court. The trustee then commenced an action in the Hennepin County District Court for a declaratory judgment that the trust was a valid and subsisting agreement. Boright, Jr. counterclaimed. These proceedings were settled by a compromise agreement executed and consented to by all persons interested in the trust, including the appellant. The district court approved a compromise agreement which provided:

C. Subject to the foregoing, the remaining trust estate shall be disposed of as a single trust as follows:

1. The trustee shall pay to the donor's nurse and housekeeper, Ana R. Gutierrez, the sum of Twelve Thousand Dollars ($12,000) per year in monthly installments commencing as of the donor's date of death and continuing for and during her life. Said amount shall be paid from the net income of the trust estate and to the extent the net income is insufficient, then from principal.

2. The trustee shall pay to the donor's son, Thomas A. Boright, Jr., effective as of August 1, 1980, the greater of:

(a) Eighty Percent (80%) of the net income of the trust estate remaining after payment of the amount due Ana R. Gutierrez under the preceding paragraph or,

(b) Thirty Thousand Dollars ($30,000) per year, in monthly installments, continuing for and during his life. In the event donor's son is payable Thirty Thousand Dollars ($30,000) per year and the net income is insufficient to pay said amount, the insufficiency shall be paid out of principal.

3. Any remaining net income of the trust estate in any year which is not paid out pursuant to the preceding provisions shall be distributed to the remainder beneficiaries named in Section D of this Article III in proportion to their interests as set forth in said Section D of this Article III, in convenient installments but no less often than annually. Said interests in the remainder shall be determined as of the last date of the year for which the net income is calculated.

D. Upon the death of the survivor of THOMAS A. BORIGHT, JR. and ANA R. GUTIERREZ, the remaining trust estate shall be distributed as follows: Twenty-five percent (25%) thereof to JOHN P. MATTOX, III or to the personal representatives of his estate, in their representative capacity and not for their own use or benefit.

Twenty-five percent (25%) thereof to MICHAEL T. MATTOX or to the personal representatives of his estate, in their representative capacity and not for their own use or benefit.

Twenty-five percent (25%) thereof in equal shares to ANNETTE DONLEVY, ALICE CHESTER, NANCY BRISEBOIS, GLENNA CAPEL and PATRICIA FIORITO, if then living. If any of the five above named beneficiaries are not then living, the bequest to that person shall lapse and her share shall be added to the remaining balance of said trust estate.

Twenty-five percent (25%) thereof in equal shares to Minnesota Masonic Home, Incorporated; United Way of Minneapolis; American Red Cross-Minneapolis Area Chapter; Boy's Clubs of Minneapolis; American Cancer Society, Minnesota Division, Inc.; and American Heart Association, Minnesota Affiliate, Incorporated. If any named organization is not then in existence at the time of distribution, that organization's share shall lapse and be divided equally among the remaining existing organizations.

Boright, Jr. died accidentally on July 13, 1982 at the age of 62. Appellant Gutierrez is 63 years of age. Glenna Capel has died, but the other individual remaindermen are living and their ages range from 45 to 70 years. All the named charitable organizations still exist. The corpus of the trust now consists of approximately $900,000.

Michael T. Mattox, one of the remaindermen, petitioned the Hennepin County District Court to (1) order the trustee to purchase an annuity contract to provide appellant with a lifetime annuity of $12,000 per year, (2) terminate the trust estate after purchase of the annuity contract and (3) distribute the remaining corpus to the remaindermen.

The district court so ordered on February 27, 1984. Appellant moved for amended findings of fact; respondent moved the trustee be directed to purchase an annuity at a cost of $97,274.00 from National Fidelity Life Insurance Company of Overland Park, Kansas, which has a Best's Rating of A + (Excellent). On April 26, 1984, the district court issued an order granting respondent's motion and appellant appealed.

## ISSUES

1. Did the trial court err by ordering the trustee to purchase an annuity and terminate the trust?

2. Is appellant entitled to attorney's fees?

## ANALYSIS

### I.

■ 1. *Scope of Review.* "Where the critical evidence is documentary, there is no need for us to defer to the trial court's assessment of its meaning." *Ploog v. Ogilvie,* 309 N.W.2d 49, 53 (Minn.1981). The critical documents in this case consist of the donor's written amendment to the trust agreement, and the compromise agreement. Thus, this court may engage in de novo review and is free to make its own determination regarding donor's intentions.

■ 2. *Donor's Intentions.* The court's role in trust administration is to fulfill the donor's intent, "which is to be gathered from the whole instrument and all reasonable inferences that may be drawn from it." *In re Trust of Tufford,* 275 Minn. 66, 71, 145 N.W.2d 59, 64 (1966). A court may only order the early termination of the trust when it has been shown "that there is no material purpose to be served by the continuation of the trust." *Id.* Finally, "[a]bsent material ambiguities, extrinsic evidence may not be admitted to vary the plain meaning of the testator's words." *In the Matter of Campbell's Trusts,* 258 N.W.2d 856, 864 (Minn.1977).

The paragraphs of the amendment to the trust agreement excerpted above, when read as a whole, reveal the following material purposes: (1) the donor intended the trust's income to provide his son and housekeeper with a steady and guaranteed source of revenue during their lifetimes; (2) he intended, by incorporating a spendthrift provision, to protect them against any imprudent use of funds; (3) he intended, by paragraph C.3. of the amendment, which required unpaid net income from the

trust estate to be added to principal, that the income generating corpus of the trust grow with time; (4) he intended the shares of the five women named in paragraph C.4. of the amendment to lapse in event of their death and be returned to the trust's principal rather than pass to their heirs; and (5) he intended the death of both beneficiaries to be a condition precedent to the remaindermen's receipt of any funds.

■ Respondent argues the donor would not have written the agreement in such a way had he foreseen the early and accidental death of his son. But, as the Minnesota Supreme Court has said:

> The court does not possess the power to and never should, rewrite or remake a will to provide by conjecture what the testator might have said if he had foreseen events occurring subsequent to his death or to escape what seems to be an undesirable result.

*In re Cosgrave's Will*, 225 Minn. 443, 449, 31 N.W.2d 20, 25 (1948). Thus, the only possible conclusion is that the donor intended for the remaindermen's shares to be fixed only after *both* income beneficiaries died.

■ The respondent asks our imprimatur, which we believe would constitute a flagrant violation of the donor's intent. To do so would constitute a serious breach of the court's obligation in trust administration to effectuate the donor's intent.

■ The compromise agreement flagrantly violates the donor's intentions. It allows the remaindermen to receive excess income now, rather than having it added to principal as the donor intended. It also deprives the various charities named in paragraph C.4. from receiving their shares of an enlarged corpus. Mere acquiescence of parties to a compromise agreement is insufficient to avoid a donor's clear intentions.

## II.

■ Appellant seeks to preserve the trust and assure the donor's intentions are fulfilled. This is normally the function of the trustee, not an income beneficiary. In the trial court and the court of appeals, however, the trustee asserted a "neutral" position in regard to the proposed purchase of an annuity and termination of the trust. This "neutrality" is incomprehensible and disappointing. The appellant was obliged to undertake the trustee's role and protect the donor's intentions, and in so doing, conferred a substantial benefit upon the trust. Appellant shall be allowed attorney's fees under the principles outlined in *In the Matter of the Trust Known as Great Northern Iron Ore Properties*, 311 N.W.2d 488 (Minn.1981).

## DECISION

Reversed and remanded for a determination of appropriate attorney's fees.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent.

The trial court's order directing the trustee to purchase an annuity contract which safeguards appellant's right to receive $12,000 per year for life, preserved the material intent of the testator and permitted the trial court to accelerate the remainder interests of the trust with consent of all beneficiaries.

The majority opinion holds that a material intent of the testator was that both income beneficiaries must die as a condition precedent to remaindermen's receipt of any funds.

The compromise agreement approved by the district court on April 17, 1983 changed that provision. The compromise agreement was the result of the testator's son's, Thomas A. Boright, Jr., challenge to the validity of the trust agreement in Hennepin County Probate Court. The trustee then commenced an action for a declaratory judgment that the trust was valid. All beneficiaries and remaindermen received notice and all but two charities appeared and were represented. All, including appellant, agreed to a compromise which gave Thomas Boright, Jr. a larger annual

income and which modified the original trust by providing that the trust income, after payment to the two income beneficiaries, would be distributed to the remainder beneficiaries according to the percentages specified in the trust rather than be added to the corpus. All beneficiaries have been receiving trust income since the district court approved the compromise agreement on April 17, 1983. That agreement, which is not part of the present action, was approved by all affected persons and was never appealed. It was in accord with Minn.Stat. § 501.35 (1982), which provides:

Any trustee of an express trust by will or other written instrument whose appointment has been confirmed, or any beneficiary of that trust, may petition the court then having jurisdiction of the trust as a proceeding in rem, * * * for instructions in the administration of the trust * * * for a construction of the trust instrument * * *. Upon such hearing the court shall make such an order as it deems appropriate, which order shall be final and conclusive as to all matters thereby determined, and binding in rem upon that trust estate and upon all the interests of all beneficiaries * * *.

This action to accelerate or terminate the trust is contested by the sole remaining income beneficiary only because she wants a "cash out" or lump sum payment if the trust is terminated. Since this would clearly contravene the spendthrift provision the testator provided for his former nurse and housekeeper, and because spendthrift provisions are recognized as material, the trial court properly provided an alternative of the guaranteed annuity.

The present corpus of the trust is in excess of $900,000. It does not seem reasonable to preserve a trust of that amount to fund $12,000 per year. It also does not seem reasonable that the testator would have named beneficiaries if he intended they would not receive anything.

Minn.Stat. § 501.40 (1982) provides that: When the purposes for which an express trust is created cease, the estate of the trustee shall also cease.

The Minnesota Supreme Court has held:

The power and jurisdiction of the court in a proper case to terminate an express trust, in proceedings brought for that purpose, when the purpose thereof has been fully accomplished, even before the expiration of the term of which it has created, are well settled by the authorities.

*Simmons v. Northwestern Trust Company*, 135 Minn. 357, 359–60, 162 N.W. 450, 451 (1917).

In this case, where the critical evidence is documentary, we need not defer to the trial court's assessment of its meaning. *Ploog v. Ogilvie*, 309 N.W.2d 49, 53 (Minn.1981). However, under these circumstances, where the settlor's son was accidentally killed at a relatively young age, where the trust has a present market value in excess of $900,000 and where all remaindermen are already receiving income through a valid compromise agreement, I find it inconceivable that the settlor would have intentionally directed that so large a trust estate be kept together to fund an annual annuity of $12,000.

Those seeking to terminate this trust have shown "that there is no material purpose to be served by the continuation of the trust." *In re Trust of Tufford*, 275 Minn. 66, 71, 145 N.W.2d 59, 64 (1966).

I would affirm the trial court.