In the Matter of the Trust Established Under Trust Agreement of Thomas A. BORIGHT, Deceased.

No. CO–84–993.

Supreme Court of Minnesota.

Nov. 15, 1985.

Martin H. Fisk, St. Paul, for appellant.

Theodore N. Treat, Jr., Minneapolis, for Ana R. Gutierrez.

William J. Berens, Minneapolis, for First Nat. Bank of Minneapolis.

COYNE, Justice.

Michael T. Mattox, a remainderman under a trust created by Thomas A. Boright, Sr., deceased, has obtained further review of a decision by a panel of the court of appeals, the majority holding that the trial court erred in directing the trustee to purchase an annuity contract providing the surviving life beneficiary under the trust, Ana Gutierrez, a life annuity of $12,000 per year and to distribute the remaining assets to the remainder beneficiaries. The trustee, First National Bank of Minneapolis, joined in the application for further review, seeking resolution of questions regarding the propriety of its neutral stance in these proceedings. We affirm the decision of the court of appeals in part and reverse in part.

On July 27, 1977, Boright, Sr., established a revocable inter vivos trust under which he reserved the right to direct the disposition of the trust principal and income during his lifetime. The trust provided that, upon the settlor's death, the trustee should distribute to the settlor's son, Thomas A. Boright, Jr., either the sum of $100,000 or title to the settlor's homestead, whichever the son should select. The remaining trust assets were to be held in a single trust and the trustee was directed (1) to pay to Boright, Jr., the sum of $20,000 per year in monthly installments; (2) to pay to the settlor's step-daughter the sum of $10,000 per year in monthly installments; and (3) to pay annually to the settlor's nurse and housekeeper, Ana R. Gutierrez, the sum of $10,000 in monthly installments. These annuities were to be paid from the net income of the trust or, to the extent the income was insufficient, from the trust principal. Any remaining income was to be accumulated. On the death of a life beneficiary, his or her annuity was to be paid over in equal shares to the surviving life beneficiaries or all to the surviving beneficiary, and on the death of the last survivor of them the trust was to be divided into four equal parts. Three parts were to be distributed outright to named individuals or their issue per stirpes, and the fourth part was to be distributed among six charities. The trust contained a spendthrift provision.

Almost two years later, on March 21, 1979, Boright, Sr., amended the trust. The amendment increased the annuities payable to Boright, Jr., and to nurse Gutierrez to $25,000 and $12,000 respectively. The annuity for the settlor's step-daughter was deleted as was the provision for paying the annuity of a deceased life beneficiary to the survivor of them. Instead that sum was to be added to the trust principal. The provisions for distribution of the trust principal to the issue of any deceased remainder beneficiary was also amended. In the event of the death of petitioner Michael T. Mattox or John P. Mattox III, each a designated remainderman of one of the four equal parts of the trust, his share was to go to the personal representative of his estate, a provision essentially equivalent to the granting of a general testamentary power of appointment. The shares of the five designated beneficiaries of the third part were to lapse on death. The provision for distribution of the fourth part to charity was left unchanged.

After the settlor's death in August of 1979, Boright, Jr., challenged the validity of the trust. While the action was pending, the parties, including the trustee and

almost all of the trust beneficiaries,[1] agreed to a compromise. The compromise primarily altered the distribution of the income not used to satisfy the annuities. The agreement provided that Boright, Jr., would receive the greater of 80 percent of the net income remaining after payment of the Gutierrez annuity or $30,000 per year; the remaining net income, if any, was to be distributed pro rata among the several remainder beneficiaries rather than accumulated as principal. The settlement agreement preserved the provision requiring distribution to await the death of both life beneficiaries, and the final remainder distribution was unaffected.

Boright, Jr., died on July 13, 1982, before formal execution of the compromise agreement, but it was executed by the representative of his estate. On April 17, 1983 the district court approved the settlement. Eight months later, in December of 1983, Michael Mattox, a remainderman, petitioned the trial court for an order directing the trustee to purchase an annuity contract to provide the surviving life beneficiary, Ana Gutierrez, with a life annuity of $12,000 per year. He also moved for acceleration of the remainder interests and distribution among the remainder beneficiaries of the entire trust estate remaining after purchase of the annuity contract.

On February 27, 1984, the district court issued an order in which the court found as fact that all of the beneficiaries of the trust except the Minnesota Masonic Home, Inc. (the charity which had neither appeared in the trust litigation nor entered into the compromise agreement), had consented to the termination of the trust. The court directed the trustee to develop a proposal for the purchase of a commercial annuity and to present the proposal to the court, together with the trustee's final account and proposed schedule of distribution of the trust estate remaining after purchase of the annuity contract.

Gutierrez brought a motion for an amendment of the findings of fact, asserting that she did not consent to the termination of the trust. Simultaneously, Michael Mattox moved the court to direct the trustee to purchase an annuity providing payment of $12,000 per year in monthly installments of $1,000 from National Fidelity Life Insurance Company. His proposal was for the purchase for a single premium of $97,274 of a life annuity for a period certain equal to Gutierrez's life expectancy. In the event Gutierrez should die before achieving her normal life expectancy, any cash refund would be paid to the remainder beneficiaries in proportion to their remainder interests. The proposal was approved by the district court and Gutierrez appealed.

A majority of the court of appeals panel concluded that the district court had erred in ordering the trustee to purchase an annuity and to terminate the trust, reasoning that such action, as well as the compromise agreement, flagrantly violated the settlor's intention that the shares of certain beneficiaries should lapse on their death rather than descend to their heirs and that none of the remainder beneficiaries should receive any funds until after the death of both life beneficiaries. *In re Trust of Boright*, 359 N.W.2d 647 (Minn.App.1984).

Ordinarily, the terms of a trust fix the period of its duration, and it will not be terminated until the expiration of that period. In certain situations, however, a trust may be terminated at an earlier date. For example, the termination of an express trust is authorized by statute and by judicial decision when the purpose for which the trust was created no longer exists. Minn.Stat. § 501.40 (1984) and *Simmons v. Northwestern Trust Co.*, 136 Minn. 357, 162 N.W. 450 (1917). In identifying the settlor's purpose and ascertaining whether or not it has been accomplished, it is necessary to distinguish the material purposes

---

**1.** One of the interested charities, Minnesota Masonic Home, Inc., did not appear in the proceeding, nor did it enter into the settlement agreement. One of the named remainder beneficiaries whose share had lapsed on her death, did not enter into the agreement. All other beneficiaries agreed to the settlement.

for which the settlor established the trust from the method prescribed in the trust instrument for carrying out those purposes.

Although the district court found that an acceleration of the remainder interests "would be in the best interests of the trust estate and all persons interested therein and would be in accordance with the settlor's intent in establishing the trust,". the court made no finding with respect to the purpose of the trust. The terms of the original trust instrument and the amendment are, however, reasonably straightforward (none of the parties complain of ambiguity), and they reveal that the purpose of the trust was to provide a fixed monthly stipend for the settlor's son and for the settlor's nurse-housekeeper while protecting the annuitants from their own improvidence and to distribute the trust estate remaining when the purpose has been accomplished to designated beneficiaries. Inasmuch as the trust directs the trustee to pay the two annuities from the trust principal if the income is insufficient, the direction to accumulate any undistributed income seems designed more to insure the adequacy of the trust funds for payment of the annuities than to withhold funds from the remainder beneficiaries—a conclusion consonant with the prevailing view that the mere fact that the trust is created for successive beneficiaries indicates nothing more than an intention to preserve the remaindermen's interest. *In re Trust Created under Will of Tufford,* 275 Minn. 66, 72, 145 N.W.2d 59, 64 (1966); *Simmons v. Northwestern Trust Co.,* 136 Minn. 157, 162 N.W. 450 (1917). *See* Restatement (Second) of Trusts § 337 comment f (1959).

■ Furthermore, the compromise agreement executed by all but one of the then interested beneficiaries directed the distribution of all of the net income of the trust. The practical consequence of the agreement is that the remainder beneficiaries are currently receiving all but $12,-000 of the annual net trust income, rather than awaiting later distribution of the trust principal enhanced by accumulated income.

The district court approved the compromise agreement on April 17, 1983 and, since no appeal was taken, that order is binding *in rem* on the trust and the interests of all beneficiaries. Minn.Stat. § 501.35 (1984). Hence, whether or not there are material purposes yet to be served by continuation of the trust must be determined not only from the trust agreement as amended by the settlor but also as revised by the compromise agreement.

■ It is a well established principle that the beneficiaries of a trust created for successive beneficiaries can compel the termination of the trust before its natural expiration if its continuance is not necessary to carry out a material purpose for its creation—provided that all of the beneficiaries consent and that none of them is under any incapacity. *In re Trust of Tufford,* 275 Minn. at 72, 145 N.W.2d at 64. *See* Restatement (Second) of Trusts § 337 (1959). Ordinarily, the presence of a spendthrift provision precludes termination of a trust prior to its natural termination date, for if one of the purposes for which the settlor created the trust was to protect the life beneficiary from his own improvidence, that purpose would be frustrated by a premature termination of the trust. *In re Trust of Tufford,* 275 Minn. at 72, 145 N.W.2d at 64. Since, however, the Boright trust provides that Gutierrez is to receive a lifetime annuity of $12,000 per year only and does not grant the trustee any discretionary authority to make additional payments to Gutierrez or for her benefit, it seems to us that the purchase of an annuity contract from an insurance company cannot be said to defeat the purpose of the trust. Moreover, since her interest in the trust is limited to the lifetime monthly annuity payments, Gutierrez does not, under the circumstances here, have any basis for challenging the expenditure of trust principal to purchase such an annuity contract. *Cf. In re Toeplitz' Estate,* 131 N.Y.S.2d 195 (1952). Minn.Stat. § 50.14, subd. 14(a) (1984). Although the reduction of trust principal is of no moment to Gutierrez as long as she receives monthly payments of

$1,000, the purchase of a single premium annuity contract is, or may be, detrimental to the interest of the remaindermen, and the purchase of an annuity should not be permitted if the remaindermen object. *See In re Estate of Gantz*, 33 Misc.2d 143, 224 N.Y.S.2d 335 (1962). Although Minnesota Masonic Home, Inc., has not objected to the purchase of an annuity, neither has it consented to the proposed purchase and termination of the trust.

Furthermore, although the district court found that "[c]onsents to the purchase of annuity contract and acceleration of the remainder interests have been received from all beneficiaries of this trust except from Minnesota Masonic Home, Inc.," it is apparent that this is not the fact. Ana Gutierrez objects. Inasmuch as two of the beneficiaries, i.e., the annuitant and one remainder beneficiary, do not consent to its termination, the other beneficiaries cannot compel the termination of the trust, except in accordance with its terms.[2] Restatement (Second) of Trusts § 340(1) (1959). *See, e.g., First Methodist Episcopal Church v. Hull*, 225 Iowa 306, 280 N.W. 531 (1938).

The consenting remainder beneficiaries contend, however, that Gutierrez's objection is of no moment because the proposed annuity contract would provide payments in the same mode and in the same amount as provided by the trust instrument. It seems to us, however, that there is a difference between the right to look to a trustee holding trust funds dedicated solely to the payment of an annuity to a life beneficiary, and the right to look to an insurance company for performance of its contract to provide an annuity, and that the difference ought not to be ignored over the objection of the annuitant. We are not unmindful of the provisions of the Minnesota Life and Health Insurance Guaranty Act, Minn.Stat. ch. 61B (1984), but the Act does not guarantee that there would be no delay in payment in the event the insurer should be unable to meet its obligations. Minn.Stat. § 61B.06 (1984). Accordingly, and in keeping with our previously demonstrated reluctance to approve alterations to the plans thoughtfully laid down by the settlor in the expectation that the trust would be carried out according to its terms, we decline to depart from the accepted rule that unless all of the beneficiaries consent, the beneficiaries cannot compel termination of the trust except in accordance with its terms.

■■■ This is not to say that it is necessary to maintain intact a trust corpus of more than $900,000 to fund an annual annuity of $12,000. It is generally recognized that partial termination of the trust may be permitted without the consent of an annuitant if the annuitant's interest is fully protected. Restatement (Second) of Trusts § 340(2) (1959). Whether, in the event of a petition for partial termination, the protection of the annuitant's interest is better achieved by retention and administration by the trustee of an amount adequate to assure annuity payments to Gutierrez, or by purchase of an annuity contract and retention by the trustee of trust funds reserved for contingent obligations with respect to the annuity, is a matter for the trustee's discretion, subject to the district court's approval.

■■■ The majority opinion of the court of appeals characterized the trustee's assertion of a "neutral" position in regard to the proposed purchase of an annuity contract and termination of the trust as "incomprehensible and disappointing." *In re Trust of Boright*, 359 N.W.2d at 651. This court has long recognized the equitable duty of a trustee to deal impartially with successive beneficiaries, and in *In re Trust known as Great Northern Iron Ore Properties*, 263 N.W.2d 610, 621, *cert. denied sub nom. Arms v. Watson*, 439 U.S. 835, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978), we adopted Restatement (Second) of Trusts §§ 183 and 232 as accurate statements of the law of Minnesota. In addition, the compromise

---

**2.** It may also be noted that the district court made no finding concerning, and the district court file does not contain, the concurrence of the Attorney General. Minn.Stat. § 501.79 (1984).

agreement, to which the trustee was a party, expressly imposed on the trustee a duty of impartiality with regard to the respective rights and interests of the income beneficiaries and remainder beneficiaries of the trust estate. Here the dispute between Gutierrez and the remainder beneficiaries primarily revolved around the terms upon which Gutierrez would consent to termination of the trust. When a termination plan which included payment to Gutierrez of the commutated value of her annuity as a lump sum cash distribution was proposed, the trustee objected—as it was obligated to do—because a lump sum cash payment would violate a material purpose of the trust expressed in the spendthrift provision. It is our view, however, that when a trustee is of the opinion that continuation of the trust is not necessary to carry out the material purposes of the trust, it is within the trustee's discretion to refrain from challenging a petition for termination—particularly when, as is the situation here, none of the beneficiaries are minors or under any legal incapacity and all of the beneficiaries are in existence and represented by counsel.

█ Finally, although Gutierrez's position on appeal was consistent with a defense of the trust, it cannot be said that she was obliged to undertake the trustee's role for the protection of the donor's intention. Accordingly, the award to Gutierrez of attorneys fees, which she had not requested of the district court, is vacated.

Affirmed in part and reversed in part.