VALENTINE EDWARD BLACQUE, ALSO KNOWN AS VALENTINE EDWARD BLACQUE BEY, v. CHARLES O. KALMAN AND OTHERS.[1]

January 9, 1948.

No. 34,512.

[1]Reported in 30 N. W. (2d) 599.

*Lipschultz & Grady,* for appellant.

*Ira C. Oehler* and *Cole Oehler,* for respondent Charles O. Kalman as executor.

*Frederick P. Bradford,* as guardian *ad litem,* for respondents Richard Edmond Blacque Bey and Valerie Blacque Bey.

260

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying plaintiff's motion for amended findings of fact and conclusions of law or for a new trial.

On May 9, 1946, Josephine Kalman Blacque Bey died testate, and her will, executed January 28, 1943, was admitted to probate in Ramsey county on June 26, 1946, where her estate is now in the process of administration. The trust here involved was created by testatrix by paragraph fourth of her will, which reads in part as follows:

"Fourth. I give, devise and bequeath all of the rest, residue and remainder of my property, real and personal, and wherever situate, to Charles O. Kalman, as trustee, upon the uses, purposes and trust following;

"Said trustee shall take said property, care for and manage same, invest and reinvest the same, and pay over the income therefrom as follows;

"One-half of the income to Valentine Edward Blacque Bey, for and during his natural life, or until the termination of this trust.

"The other half, and all of the trust income after the death of my son, to Cecelia Kalman [sister of decedent], for and during her natural life.

"If my son survives my sister, then this trust shall terminate on the death of Cecelia Kalman, and all property then held by the trustee, including accumulated income, forthwith shall be assigned, transferred, conveyed and paid over to my son.

"Should Cecelia Kalman survive my son, then this trust shall continue after the death of Cecelia Kalman until the eldest child of my son becomes twenty-one years of age, and the income shall be paid to the Guardian of my grandchildren, or expended by the trustee, from time to time in the Trustee's discretion and in such amounts as to the trustee may seem proper. Any income not so paid or used shall be accumulated.

"After the death of Cecelia Kalman and when the eldest child of my son living to attain the age of twenty-one years becomes twenty-one years of age, the trustee then forthwith shall assign, transfer,

convey and pay over all property then held by the trustee, including accumulated income, to my son's issue, per stirpes.

"This trust shall terminate, in any event, on the death of the survivor of my son, his children, Richard and Valerie, and my sister."

On September 18, 1946, Cecelia Kalman executed her written declination and refusal to accept the beneficial provisions of the trust in her favor.

At the time of the execution of her will on January 28, 1943, decedent and her sister, Cecelia Kalman, were the beneficiaries then entitled to the income of a testamentary trust created by their mother, Sarah W. Kalman, who died in January 1937 and whose last will and testament was admitted to probate in Ramsey county on February 7, 1937. The will of Sarah W. Kalman transferred certain securities and assets to a trustee, for the uses in trust, so far as here material, substantially as follows: One-half of the income of the trust estate to be paid to Josephine Kalman Blacque Bey during her lifetime; the other one-half of the income to be paid to Cecelia Kalman during her lifetime. Upon the death of either Josephine or Cecelia, the one-half of the income to which the one then deceased had been entitled during her lifetime was directed to be paid in equal shares to the four grandchildren of Sarah W. Kalman, namely, Valentine Edward Blacque, plaintiff here, Margaret Kalman Orton, Arnold Kalman, and Elizabeth K. Schulke. Late in 1945, the grandchildren, except Elizabeth K. Schulke, executed and delivered to the trustee of the Sarah W. Kalman trust assignments transferring to Cecelia all income that would become payable to the assignors under the Sarah W. Kalman trust in the event that Josephine should predecease Cecelia. In the alternative, each of the assignments transferred to Josephine all income that would become payable to the assignors under the Sarah W. Kalman trust in the event that Cecelia should predecease Josephine. Two of these assignments are dated in October 1945; the third assignment is dated December 27, 1945. Since the death of Josephine and by virtue of the assignments to Cecelia, the latter is now receiving seven-eighths of the entire income from the Sarah W. Kalman trust, which ac-

cording to the findings of the trial court had a market value as of April 30, 1946, of $298,052.68 and produced an annual income as of that date of $11,523.38, seven-eighths of which is $10,082.95.

Plaintiff brought this action in district court requesting a declaratory judgment:

"1. That the purpose for which the Trust created in paragraph 'Fourth' of the Last Will and Testament of Josephine Kalman Blacque Bey was fully accomplished during the lifetime of Josephine Kalman Blacque Bey, subsequent to the execution by her of her Last Will and Testament.

"2. That there now is no purpose or reason for the establishment of said Trust by awarding any part of the residue of the estate of Josephine Kalman Blacque Bey to the trustees named in paragraph 'Fourth' of said Will and for the purposes in said paragraph set out."

Separate answers were interposed by Charles O. Kalman as executor of the will and by Cecelia Kalman as administratrix *cum testamento annexo* of the estate of Josephine admitting the allegations of the complaint, alleging on information and belief that the purposes and objects for the establishment of the trust which existed in 1943 when the will was executed did not exist on the date of the death of Josephine and do not now exist, and praying that the relief asked for in the complaint be granted. A separate answer by Charles O. Kalman as trustee of the trust under the will of Josephine was also interposed praying for a determination by the court as to whether under the terms of decedent's will a trust should be established by awarding a part of the residue of decedent's estate to the person named as trustee in paragraph fourth of the will. The separate answer of Richard Edmond Blacque Bey and Valerie Blacque Bey, by Frederick P. Bradford, their guardian *ad litem,* denied the allegations of the complaint and requested that the relief demanded in the complaint be denied.

The case was tried to the court without a jury. As a conclusion of law the court held that the purposes and objects of Josephine in

creating the trust established by paragraph fourth of her will have not been fully accomplished and have not ceased. Plaintiff appeals from the order of the trial court denying his alternative motion for amended findings and conclusions or for a new trial. Insofar as the order denies the motion for amended findings and conclusions, it is not appealable. Magee v. Odden, 220 Minn. 498, 20 N. W. (2d) 87.

■ The main question for determination is whether the evidence supports the conclusions of the trial court that the purposes and objects of creating the trust in Josephine's will have not been fully accomplished and have not ceased, and, if so, whether the court erred in denying plaintiff's motion for a new trial. M. S. A. 501.40 provides:

"When the purposes for which an express trust is created cease, the estate of the trustee shall also cease."

Plaintiff claims, as does the executor of decedent's will, that the rule applicable in cases of this character is well stated in Simmons v. Northwestern Trust Co. 136 Minn. 357, 359, 162 N. W. 450, 451, L. R. A. 1917F, 736, as follows:

"The power and jurisdiction of the court in a proper case to terminate an express trust, in proceedings brought for that purpose, when the purposes thereof have been fully accomplished, even before the expiration of the term for which it was created, are well settled by the authorities."

In that case, the will of the testatrix devised and bequeathed to defendant, the trust company, certain real and personal property in trust for the use and benefit of plaintiff, a sister of testatrix, with the provision that the income therefrom was to be paid to plaintiff during her lifetime and the remainder at her death was to be paid to two other sisters of testatrix. The will was admitted to probate and the estate administered in accordance with those provisions. The trust property was decreed to the trustee and thereafter, with the exception of the real estate, was managed by the trustee and the income therefrom paid to plaintiff. The trustee never took possession of the real property, but committed the same to the posses-

sion and control of plaintiff, the cestui que trust, and those jointly interested therein with her. The final decree of the probate court was rendered and duly entered. At the time of the execution of the will plaintiff was married, but was divorced about 18 months after the final decree in her sister's estate was entered. The real purpose of the testatrix in creating the trust for the benefit of plaintiff was not disclosed by the will, although it appears clear that it was not for incompetence, as plaintiff apparently was a person of intelligence and capable of managing her property affairs. There was some evidence admitted over defendant's objection that the purpose of the trust was to prevent the property from reaching the hands of plaintiff's husband, who testatrix believed would squander it if it should go directly to plaintiff. Subsequent to the dissolution of plaintiff's marriage, her two sisters, who were to receive the remainder under the will, conveyed their interest to plaintiff, so that at the time of the trial and appeal she owned the reversionary interest in the trust property, as well as the income therefrom. Plaintiff contended (1) that the purpose of the trust was to protect her from her spendthrift husband and prevent the property from falling into his hands, and that, since she had procured a divorce and thus had relieved herself from further control of her former husband, all danger of dissipation of the property from that source had passed and therefore the purpose of the trust had been accomplished; and (2) that, since she was the owner of the entire beneficial interest in the trust property, both income and the estate in reversion, she was also entitled to a termination of the trust. It was held that the court had power in proper cases to terminate an express trust when the purpose thereof had been fully accomplished, even before the term for which it was created had expired. The court further said that where the purpose of the trust did not expressly or by fair implication appear on the face of the instrument creating it it was doubtful whether such purpose might be shown by extrinsic evidence, as was attempted in that case. However, the court did not pass on that phase of the case, as it decided that plaintiff's second contention must be sustained, inasmuch as the entire beneficial interest in the

trust property, both income and the estate in reversion, had vested in her. That case differs from the one at bar, because there the two sisters of plaintiff who were solely entitled to the remainder interest conveyed all their interest to plaintiff after the latter had obtained a divorce from her husband. They had a right to do that if they wished, and in doing so it left plaintiff the sole owner of the trust property. There was no one in that case who objected to the termination of the trust on account of any claimed contingent interest, as in the instant case. Here, we have a situation where the guardian *ad litem* of Josephine's grandchildren, who claim a contingent interest in the property, is refusing to consent to the termination of the trust and refuses to sign a release in behalf of his wards.

■ Plaintiff then argues that the language of the will demonstrates to a certainty that the intention and purpose of Josephine was to assure an income to Cecelia during the latter's lifetime. He contends that, because Josephine directed that the trust should terminate upon Cecelia's death if he survived the latter (in which event plaintiff would receive the corpus), it shows conclusively that the only object or purpose of the trust was to assure a life income to Cecelia, and that when Cecelia declined and refused to accept the beneficial provisions in her favor the purpose of the trust had been fully accomplished and no reason existed for its continuation. This argument would be convincing if only plaintiff and Cecelia were involved, but a careful examination of the provisions raises another and vitally important question. *What about the contingent provisions for the children of plaintiff* (Josephine's grandchildren) in case Cecelia should survive plaintiff? In that event, the trust provides in part that it shall continue after the death of Cecelia until the eldest child of plaintiff becomes 21 years of age; that the income is to be paid to the guardian of plaintiff's children or expended by the trustee from time to time at the discretion of the trustee in such amounts as may seem proper; and that any income not so paid or used shall be accumulated. The trust further provides that when the eldest child of plaintiff living to attain the age of 21 (after Cecelia's death) becomes 21 years of age the trustee shall forthwith

assign, transfer, convey, and pay over all the property then held by the trustee, including accumulated income, to plaintiff's issue per stirpes.

Here, we have a *contingent interest* of plaintiff's children in the trust to consider. Contingent upon what? Contingent only upon Cecelia's outliving plaintiff. Plaintiff argues that the circumstance that his minor children are contingent or remote beneficiaries does not in any way militate against the termination of the trust at this time, because, he claims, the children were made contingent or remote beneficiaries solely to prevent intestacy of Josephine's estate, and that the statute under which this proceeding is brought does not require any consent, by the minors or the guardian, for the termination of the trust. That may be his conclusion, but we are compelled to examine the trust provision in its entirety and try to determine from its contents (1) whether Josephine intended that the trust was to continue in force after Cecelia's death, in the event that the latter survived plaintiff, so that the children of plaintiff would be provided for, or (2) whether she intended that plaintiff and Cecelia could agree between themselves at any time before the death of either one of them that the purposes for which the trust was created had been fully accomplished merely by Cecelia's renouncing her beneficiary interest in the trust and then by court action seek termination of the trust as effectively as though Cecelia were deceased, thus eliminating the contingent interest which would otherwise have gone to Josephine's grandchildren after Cecelia's death if she survived plaintiff.

It is an elementary duty of a guardian in an action of this kind, where the minors are made parties defendant, to examine into the case and determine what the rights of the minors are, what defenses exist, and what defenses may be interposed with a reasonable prospect of success.

"It is the general duty of the guardian to make the case of the minor his own. He must exercise the same diligence and prudence

that he would if the case were his own; * * *." Dunnell, Minn. Pr. § 373.

The fact that the minors or the guardian *ad litem* did not consent to the termination of the trust or did not sign releases would certainly be factors which the trial court, under the circumstances of the case, could take into consideration in arriving at its decision.

The matter of a contingent interest, even though remote, was considered by this court in In re Trust Under Will of Schultz, 215 Minn. 313, 9 N. W. (2d) 773, in an action brought by the trustee for a construction of a trust created under a will, and opposed by a contingent beneficiary, where it was urged that the contingent interest was so remote that it was unlikely ever to become a vested interest. In that case, the contingent interest in the trust seemed far more remote than here, as the contingent beneficiary was 53 years of age and would not recover a distributive share of the estate, even if his position were sustained as to the construction of the will, unless Evelyn Welch, aged 31, Ernest Welch, aged 35, and the three minor children of Ernest Welch, aged 14, 7, and 5, all predeceased the contingent beneficiary, and, before his death, Stella Welch, aged 53, also died. The court said (215 Minn. 317, 9 N. W. [2d] 776):

. "Although there are authorities holding that a beneficiary cannot maintain a suit against a trustee where his interest is dependent upon a remote contingency—one which is unlikely ever to occur— we believe it to be the better rule that such a beneficiary may upon reasonable cause apply to the court to have his interest properly secured. This rule has substantial support in the authorities. Roberts v. Michigan Trust Co. 273 Mich. 91, 262 N. W. 744; Hunt v. Hunt, 124 Mich. 502, 83 N. W. 371; Haldeman v. Openheimer (Tex. Civ. App.) 119 S. W. 1158; Canada v. Daniel, 175 Mo. App. 55, 157 S. W. 1032; University v. Tucker, 31 W. Va. 621, 8 S. E. 410; Cannon v. Barry, 59 Miss. 289; Hall v. M. B. O'Reilly Realty & Inv. Co. 306 Mo. 182, 267 S. W. 407. * * *

"Considering the admittedly ambiguous provision of the trust, and in view of the fact that appellant has a contingent interest,

·although extremely remote, we conclude that the trustee's position that the appeal be dismissed as frivolous is not well taken. With the tempo of life accelerated in these days of the automobile and the airplane, contingent interests of beneficiaries are not nearly so remote as they were a few decades ago. The alarming and ever-increasing number of deaths from auto accidents alone is a matter of common knowledge. Entire families have met death in a few tragic moments on the public highways. Under these circumstances, it does not seem reasonable that a contingent beneficiary, although his interest be remote, should be required to sit idly by without taking such steps as he deems necessary to have the trust provisions executed according to the intentions of the settlor."

There can be no dispute under the terms of the trust that if plaintiff survives Cecelia the trust shall terminate and all the property then held by the trustee shall be paid over to plaintiff forthwith. We cannot read from the record, however, that Josephine's only purpose in creating the trust was to assure Cecelia an income during her lifetime and that because Cecelia declined or refused to accept the provisions of the trust in her favor the purposes of the trust had been fully accomplished.

Plaintiff contends that Josephine did not and could not, at the time of the execution of her will on January 28, 1943, anticipate that three of the four secondary beneficiaries under the will of Sarah W. Kalman would assign to Cecelia the respective shares to which they would be entitled upon the death of Josephine, and that this would result in Cecelia's receiving seven-eighths of the income from Sarah's trust after Josephine's death instead of one-half the income to which she otherwise would have been entitled. However, the fact remains that two of the so-called secondary beneficiaries of the Sarah W. Kalman trust assigned their shares in October 1945, about *seven months* before Josephine's death, and a third made his assignment on December 27, 1945, more than *four months* prior to Josephine's death. While it is true that Josephine might not have anticipated when she made her will in January 1943 that these assignments would be made to Cecelia, *she might have known several months*

*before her death that these assignments were actually made* and that as a result of the assignments Cecelia would receive seven-eighths of the income from Sarah's estate after Josephine's death. There is nothing in the record to show whether Josephine knew of these assignments before her death, although the assignments would have given her seven-eighths of the income from the Sarah Kalman trust during her lifetime if she had survived Cecelia. The record discloses · nothing as to Josephine's physical or mental condition from the time these assignments were made until her death, but the fact remains that she lived for several months after they were made and she made no codicil to her will and no change in the trust provisions with reference to the contingent interest in the trust which her grandchildren were to receive in the event that Cecelia should survive plaintiff.

The record shows that plaintiff and his wife were divorced in August 1941, and at the time of the trial of this action they had two children, defendants Richard Edmond Blacque Bey, aged nine, and Valerie Blacque Bey, aged six. The children's mother remarried and was living in New York, but plaintiff had not remarried. It is reasonable to assume that Josephine had full confidence in plaintiff, as she was entirely willing that he should receive her entire estate forthwith if he survived Cecelia. It is also reasonable to assume that Josephine gave some thought and consideration to the future welfare of her grandchildren in the event that plaintiff should predecease Cecelia, and that may have been the reason why she made no changes in her will after the assignments were made in the Sarah W. Kalman trust. The executor defendant contends that Josephine did nothing to protect a grandchild against his or her own incapacity or inability to manage his or her property after the death of Cecelia, because she provided that after the death of Cecelia the trustee was to pay over all the property to plaintiff's issue per stirpes when plaintiff's eldest living child reached the age of 21 years. We cannot agree that Josephine did nothing to protect her grandchildren when we consider that her will was made in January 1943, at which time plaintiff's oldest child must have been

about six years old. Josephine died in 1946, and the oldest child was then nine years old. Assuming that Cecelia, the aunt, is older than plaintiff, there is still the possibility that he may predecease her. If this occurs and Cecelia then dies several years before the eldest child of plaintiff reaches the age of 21 years, income will be provided for the minors during those years before the majority of the eldest living child. It may be said that such a possibility is too remote, but stranger things have happened. It appears that Josephine might have given that phase of the contingency some consideration, especially in view of the fact that the children's parents are divorced.

We cannot see where any injustice will be done by not terminating the trust at this time. If plaintiff survives Cecelia, he will receive the entire trust estate under the terms of the will. In the meantime, he will receive the income from the trust during Cecelia's lifetime, as she has renounced her beneficial interest. If Cecelia survives plaintiff, provisions are made for his children after her death. Meanwhile, we are not taking away from plaintiff's children the beneficial contingent interest to which they are entitled under the terms of the will. Who can say in this hazardous age which one of us will survive the other. With the daily occurrences of sudden and accidental deaths from causes unheard of a generation or two ago, it is quite possible for an older person to survive a younger. We believe that we should let nature take its course in the matter before us, and that the trial court should be upheld in its conclusion that the purposes and objects of the trust have not been fully accomplished and have not ceased.

■ We recognize that there are conditions under which the remainder interests in a trust may be accelerated so that the beneficiaries can acquire the property at an earlier date. In Will of McIlhattan, 194 Wis. 113, 117, 216 N. W. 130, 131, the court said:

"* * * It is a general rule of law that the election of the widow has the same effect as her death, and accelerates the remainders so that the beneficiaries enter directly into enjoyment thereof. 28 Ruling Case Law, 333; [citing cases]. This general rule of law does

not apply if the terms of the trust expressly otherwise provide; that is, the intent of the testator must prevail if that intent is manifest from the will itself."

In that case the trust provided, among other things, that the net income from testator's farm should be paid to his wife for life, and that the income from notes, mortgages, and moneys should be paid to his wife and his brother Fred on a basis of one-half to each. Upon the death of his wife, the personal property was to be sold, and, after payment of certain specific bequests, the residue of personal property was to go to his brother Fred. After his wife's death, the real estate of testator was to go to certain named legatees. Testator's widow elected to take under the statute and not under the will. His brother Fred, cobeneficiary with the widow under the trust, died prior to the making of the order construing the will. The court held that upon the election of the widow to take under the statute instead of the will and upon the death of Fred, the cobeneficiary, the purposes of the trust ceased, citing a Wisconsin statute similar to M. S. A. 501.40, *supra*. The court further said that the purposes of the trust could not be carried out in accordance with the terms of the will after the election of the widow and the death of Fred and that there was no object in continuing the trust until the death of the widow. In our opinion, the fact situation there was entirely different from the instant case. The general rule of acceleration as defined in Restatement, Property, § 231, provides as follows:

"When an attempted prior interest fails because the person to whom it is limited renounces it, succeeding interests are accelerated except when

"(a) the terms and circumstances of the limitation manifest a contrary intent [referring to §§ 232 and 233]; * * *."

In 33 Am. Jur., Life Estates, Remainders, etc., § 156, it is stated:

"The doctrine of acceleration * * * is * * * a rule of interpretation and is to be applied so as to effect, and not to defeat, the testator's intention."

We believe, in fairness to all parties involved herein, that inasmuch as Josephine made no changes in her will or trust, though she lived for several months after an increase in certain income was assured to Cecelia by assignments in her mother's trust, it can be assumed that Josephine's intention must have been to give her grandchildren some consideration under the facts and circumstances of the case. It appears to us that if her only concern was an income for Cecelia she had ample time to make a change in her will if she so desired.

The trial court did not err in refusing to grant a new trial.

Affirmed.

PETERSON, JUSTICE (dissenting).

It seems to me that the sole purpose of the trust was to provide an income for Cecelia during her life and that, because such purpose has been rendered impossible of accomplishment by her renunciation of the provisions of the trust for her benefit, the trust should be terminated.

The problem here is one of construction. It is clear that in providing for Cecelia testatrix assumed that Cecelia would accept the provisions made for her and that all the provisions of the will were made with reference to that assumption. The will evinces clearly testatrix's intention that if the trust should be terminated during plaintiff's life by Cecelia's death, which was the only way it could be terminated according to the terms of the will if Cecelia accepted the provisions of the trust for her benefit, plaintiff should take the corpus and the grandchildren should not take at all. In other words, there was no intention to provide at all events for the grandchildren. The intention was that they should take only as remaindermen upon the happening of two contingencies, viz., (1) termination of the trust for Cecelia's benefit, and (2) plaintiff's death prior to hers; and that if both contingencies did not occur plaintiff was to take absolutely to their exclusion.

Cecelia's renunciation of the provisions of the trust for her benefit was an unforeseen and unanticipated event. (See, In re Trust Under Will of Holden, 207 Minn. 211, 216-217, 291 N. W. 104, 107.) It

operated to terminate the trust by rendering its purpose impossible of accomplishment. While it terminated the trust, it did so in a manner quite different from what the testatrix had in mind when she created it, which was that it would be terminated by Cecelia's death. Even so, it is the duty of the court to give effect to the testatrix's intention if that can be done. In Whiting v. Whiting, 42 Minn. 548, 549, 44 N. W. 1030, 1031, Mr. Justice Mitchell stated the rule applicable here in particularly apt language, as follows: "* * * the cardinal canon for the construction of wills is that the general intent of the testator overrides all mere technical and grammatical rules of construction." It seems that testatrix's intention can be given effect. Since she intended to give the corpus to plaintiff absolutely upon the termination of the trust if he should then be living and to provide for the grandchildren only contingently, depending upon the termination of the trust and plaintiff's death prior to Cecelia's, and, since the trust has been terminated by impossibility of accomplishment, only the provisions under which plaintiff is entitled to take the corpus are operative. Those providing for contingent interests for the grandchildren cannot become effective, for the reason that the contingencies upon which their effect depends have not occurred. A construction of the will that it makes absolute provision for the grandchildren as remaindermen is contrary to testatrix's intention that they shall take only contingently upon the termination of the trust and plaintiff's death prior to Cecelia's; that they shall not take at all if plaintiff is living when the trust for Cecelia is terminated; and that in such event plaintiff shall take absolutely to their exclusion.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.