**Kim Allan SHARP, Debtor, Plaintiff/Appellant,**

v.

**Fred J. DERY, Chapter 7 Trustee, Defendant/Appellee.**

No. CIV. 99–40349.

United States District Court, E.D. Michigan, Southern Division.

Sept. 26, 2000.

---

Gary H. Cunningham, James T. Dunn, Strobl & Borda, Bloomfield Hills, MI, for appellant.

Samuel D. Sweet, Beadle, Burket, Troy, MI, for appellee.

### ORDER

GADOLA, District Judge.

Before the Court is Debtor/Appellant Kim Allan Sharp's appeal from an order of

the bankruptcy court relating to the disposition of a post-petition bonus. The Court must decide the following issue: did the bankruptcy court commit an error of law when it ruled that a bonus, or portions thereof, given to Debtor by his employer post-petition, which was declared post-petition, for which eligibility to receive the bonus required post-petition employment as a condition, and for which the Debtor would not have been eligible, or have had any enforceable claim to, as of the petition day, is property of the estate under 11 U.S.C. § 541? For the reasons stated below, I hold that it did.

## I BACKGROUND

The parties agree upon the following facts. Debtor filed a Chapter 7 petition on December 21, 1998. At that time through February, 1999, Valasis Communications, Inc. employed Debtor. On February 22, 1999, Debtor received an employee bonus of $11,331.63.

The bonus plan was based upon a fiscal year of January 1 to December 31. To receive the bonus under the plan, a worker must have been employed in good standing when the company issued the bonus checks; i.e., he must not have been fired or resigned during the plan year or before issuance of the dividend. An exception existed for employees who retired, were disabled, or died during the fiscal year. In those cases, the plan administrator may have, at his discretion, issued the employee a pro rata dividend.

The employer had the right to amend, suspend, or terminate the bonus plan at any time. The timing of any bonus checks under the plan also was at the employer's sole discretion.

In addition to the facts on which both parties agreed, Appellee/Bankruptcy Trustee ("Trustee") avers that the bankruptcy court observed that Debtor did not disclose that he would receive a bonus when he filed his bankruptcy petition and schedules. At the § 341 meeting, which was held just before Debtor received the

bonus on February 22, 1999, Debtor stated that the bonus's value would be lower than it ultimately was. Partly because of these factors, Debtor failed to qualify for a discharge under § 727 of the Bankruptcy Code.

Because of the facts outlined above, Trustee sought a determination from the bankruptcy court that the post-petition bonus was property of the estate. The bankruptcy court decided that it was, and ordered Debtor to turn over the post-petition bonus to Trustee. Trustee is now holding those funds in escrow pending the outcome of this appeal.

## II STANDARD OF REVIEW

■ District courts review a bankruptcy court's conclusions of law de novo. See Investors Credit Corp. v. Batie (In re Batie), 995 F.2d 85, 88–89 (6th Cir.1993). A district court will not disturb a bankruptcy court's findings of fact, however, unless those findings were clearly erroneous. See Manufacturers Nat'l Bank v. Auto Specialties Co. (In re Auto Specialties Mfg. Co.), 18 F.3d 358, 361 (6th Cir.1994).

## III ANALYSIS

■ When a debtor files for bankruptcy, an estate is formed. See 11 U.S.C.A. § 541(a) (West 2000). From that estate, creditors will attempt to recover at least some of their claims. The bankruptcy estate's property includes "all legal or equitable interests of the Debtor in property as of the commencement of the case," subject to limited exceptions. 11 U.S.C.A. § 541(a)(1). Congress intended "property of the estate" to encompass "all interests of the debtor, including a debtor's contract right to future, contingent property." Banner v. Bagen (In re Bagen), 186 B.R. 824, 828 (Bankr.S.D.N.Y.1995) (citing Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir.1984)). Although whether a debtor's alleged interest is estate property is a question of federal law, the Court must look to state law when deciding

whether a debtor had a legal or equitable interest in the property when he filed for bankruptcy. *See Matter of Yonikus,* 996 F.2d 866, 869–70 (7th Cir.1993) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

■ The determinative issue in this case, therefore, is whether Debtor had an enforceable right to receive the bonus check when he filed his petition, December 21, 1998. The bankruptcy court examined the particulars of the bonus plan at bar and noted that "when an employee receives a dividend is not discretionary"[1] and "the amount of the dividend an employee receives is not discretionary, and is not based upon the employee's work performance. It is based upon a percentage of the employee's salary." (Brief for Appellee, Ex. A at 14–15.) The court below thus reasoned that, because the employer had no discretion as to the amount and timing of any bonus that it decided to pay, Debtor had a right to the bonus as of December 21, and that bonus was therefore the estate's property. (Brief for Appellee, Ex. A at 15.)

The bankruptcy court misconstrued the significance of the above fact. Although the employer may have had no discretion over the amount of any bonus that it actually paid Debtor, as both parties agree, the bonus plan's terms gave the employer discretion *as to whether it would pay any bonus at all.* (Brief for Appellant at 2; Brief for Appellee at 1.) The question thus becomes whether a bonus plan under which Debtor had no contractual right to payment as of December 21 gave Debtor an enforceable right to the bonus check he would eventually receive in February, 1998.

One case is squarely on point. In *Vogel v. Palmer (In re Palmer),* 57 B.R. 332 (Bankr.W.D.Va.1986), the debtor received a bonus from his employer roughly six months after he filed his bankruptcy petition. *See id.* at 332. As the court below noted, there were three salient facts that led the *Vogel* court to conclude that the debtor had no enforceable interest in the bonus when the case began, and the post-petition bonus thus was not property of the bankruptcy estate: (1) for the debtor to receive the bonus, the employer had to employ him at the time it declared the bonus; (2) "to be eligible for the bonus, the debtor had to satisfactorily perform his job"; and (3) payment of the bonus was solely at the employer's discretion. (Brief for Appellee, Ex. A at 14.)

As explained above, and according to the facts stipulated in this case, all three of the critical factors that led the *Vogel* court to hold that the post-petition bonus was not property of the estate exist here. The only one that is even arguably absent is the second, requiring that the employee "satisfactorily perform his job" in order to get the bonus.

The bonus plan in this case, however, requires that "an employee must be currently employed in good standing." (Brief for Appellant at 1.) It is hard to imagine how an employer who does not "satisfactorily perform his job" could be "employed in good standing." Even if there were a difference between those two terms, however, both the bonus plan at bar and the one at issue in *Vogel* share the same dispositive characteristic: the employer, as of the date the debtor filed for bankruptcy, could have decided not to pay any bonus at all under the terms of the bonus plan itself. That was the chief reason that the *Vogel* court held that bonus plan it addressed was not property of the estate. *See Vogel,* 57 B.R. at 336–37.

---

1. Both parties agree that the timing of bonus checks was at the employer's discretion. (Brief for Appellant at 2; Brief for Appellee at 1.) The terms of the plan itself, moreover, state that "[t]he timing of the issuance of dividend checks ... is at the discretion of the Company." *Valassis Communications, Inc. Team Achievement Dividend Plan Rules* (Effective January 1, 1996). The Court thus finds that the bankruptcy court committed a clear error of fact on this point.

■ This case might be distinguishable from *Vogel* if, despite the bonus plan's terms, Michigan law held that a worker had an enforceable right in bonus dividends before payment. In those circumstances, the bonus dividend would have been a legal interest of Debtor when he filed for bankruptcy, and thus part of the bankruptcy estate. But Michigan law embraces the opposite principle: an employee who ends his employment before the closing date of a bonus period, thereby failing to establish a contractually-mandated condition for receipt of the bonus, forfeits eligibility for the bonus dividend. *See Gravely v. Pfizer, Inc.*, 170 Mich.App. 262, 427 N.W.2d 613, 616 (1998). As of December 21, therefore, Debtor would have had no legally-recognized interests in the bonus check he later received on February 22.

■ Although *Vogel* is not binding on this Court, its reasoning is consistent with the well-established principle that when post-petition income "is dependent upon the continued services of the debtor subsequent to the petition, the amounts do not constitute property of the estate." *Vogel*, 57 B.R. at 334; *see also In re Kervin*, 19 B.R. 190, 193–94 (Bankr.S.D.Ala.1982) (holding that an insurance salesman's right to renewal premiums was not part of the estate because it was contingent upon generating new business and providing policyholder services); *McCracken v. Selner (In re Selner)*, 18 B.R. 420, 421–22 (Bankr. S.D.Fla.1982); *cf. Tennessee Valley Authority v. Kinzer*, 142 F.2d 833, 838 (6th Cir.1944) (holding that at the time of filing for bankruptcy debtor had no interest in contributions he could not enforce).

■ The post-petition services that a debtor need perform in order to trigger this rule are, moreover, exceedingly slight. In *Matter of Haynes*, 679 F.2d 718 (7th Cir.1982), for example, the Seventh Circuit held that the pay of a military retiree was not part of the bankruptcy estate, because it was conditioned on his obligation to perform certain military duties if called upon to do so. *See id.* at 719. The *Haynes* court cited no example of the debtor ever actually having had to perform such an obligation. *See id.* at 718–19. It merely reasoned that because the debtor "remained subject to the Uniform Code of Military Justice ... and could be recalled to active duty" in an emergency, his retirement pay was dependent upon continued services subsequent to the petition, and thus did not constitute property of the estate. *Id.* at 719.

In this case, Debtor had to labor for his employer more than two months after the date of filing in order to be eligible for his bonus pay. In light of cases such as *Haynes*, it is apparent that his bonus check was "dependent upon the continued services of the debtor subsequent to the petition," such that it does "not constitute property of the estate." *Vogel*, 57 B.R. at 336–37.

Attempting to refute this conclusion, Trustee cites *Towers v. Wu (In re Wu)*, 173 B.R. 411 (9th Cir. BAP 1994) for the proposition that the bonus check "will constitute property of the estate if it is sufficiently rooted in pre-petition activities." (Brief for Appellee, Ex. A at 3.) Trustee argues that the rationale of *Wu* would lead the Court to apportion the bonus between the parts that Debtor earned pre-petition and post-petition, the former going to Trustee and the latter to Debtor. (Brief for Appellee, Ex. A at 4.) The Court rejects this argument for three reasons.

First, apportionment would be contrary to the plain language of § 541. That statute, in pertinent part, dictates that only "legal or equitable interests of the debtor in property *as of the commencement of the case*" are included in the bankruptcy estate. 11 U.S.C.A. § 541(a)(1) (emphasis added). Regardless of how rooted Debtor's bonus might have been in prepetition activities, he had, for reasons discussed above, no "legal or equitable interests" in that dividend when the case began on December 21, 1998. Under the clear lan-

guage of the statute, therefore, the Court cannot apportion any part of that bonus dividend to the estate.

 Even if the text were unclear, legislative history would provide a second reason for this Court's conclusion. As both the House of Representatives and Senate Reports make plain, § 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." H.R. Rep. 95–595, at 367 (1977), U.S.Code Cong. & Admin.News 5963, at 6323 (1977); S.Rep. No. 95–989, at 82 (1978), U.S.Code Cong. & Admin.News 5787, at 6043 (1978). A trustee, moreover, "could take no greater rights than the debtor himself had" on the day of filing the bankruptcy petition. H.R. Rep. 95–595, at 368 (1977), U.S.Code Cong. & Admin.News 5963, at 6323 (1977); S.Rep. No. 95–989, at 82 (1977), U.S.Code Cong. & Admin.News 5787, at 6043 (1978).

Applying Congress's rationale, as revealed through the House and Senate reports, to these facts, the Court notes that at the "commencement of the case," neither the terms of the bonus plan nor Michigan law gave Debtor an enforceable part of the bonus dividend. Section 541 of the Bankruptcy Code does nothing to change that. It follows, therefore, that Trustee, who could take no greater rights in the property than Debtor had, also had no enforceable interest in the bonus dividend at the case's beginning. The Court, accordingly, may apportion no part of the bonus plan to pre-petition services and allot that portion to the estate.

The third reason that this Court decides it cannot apportion the part of Debtor's bonus attributable to his pre-petition services to the estate is that the chief decisions upon which the *Wu* court relied are consistent with such a holding. In *Wu*, the Bankruptcy Appellate Panel of the Ninth Circuit noted that, in cases dealing with insurance-renewal commissions vis-a-vis § 541, courts generally "make the entire analysis turn on the presence of a requirement of postpetition services … if

there is such a requirement, all of the renewal commissions will be excluded from the estate." *Wu*, 173 B.R. at 414.

Citing *FitzSimmons v. Walsh*, 725 F.2d 1208 (1984) and *Rau*, however, the *Wu* court rejected this all-or-nothing approach. *See Wu*, 173 B.R. at 414–15. But *FitzSimmons* and *Rau* do not support apportionment in these circumstances. Both of those cases are not, moreover, inconsistent with the principle that when post-petition income "is dependent upon the continued services of the debtor subsequent to the petition, the amounts do not constitute property of the estate." *Vogel*, 57 B.R. at 334.

In *FitzSimmons*, the Court applied § 541(a)(6) of the Bankruptcy Code. Section 541(a)(6) dictates that the estate's proceeds belong to the estate, except for proceeds arising from services that the debtor performs post-petition. The debtor in *FitzSimmons* was a debtor-in-possession of a sole proprietorship, which also employed other people, and was allowed to operate the practice on behalf of the estate. *See FitzSimmons*, 725 F.2d at 1209–10. Under this arrangement, the bankruptcy court allotted a fixed monthly-amount of the proprietorship's earnings to the debtor as a salary. *See id.* at 1209–10.

The debtor appealed, arguing that he should be entitled to all of the proprietorship's earnings under § 541(a)(6). The trustee contended, in response, that all of the proprietorship's earnings belonged to the estate because they were "proceeds" of the estate under § 541(a)(6), and therefore not assignable to the debtor. *See id.*

On appeal, the Ninth Circuit remanded the case to determine what percentage of the law practice's earnings assigned to the debtor was attributable to his personal, post-petition services, and thus rightfully belonged to the debtor, and what percentage was from proceeds of the estate, which would belong to the estate. *See id.* at 1212. *FitzSimmons*, in short, did not hinge, as does this case, on whether the

debtor had an enforceable right in proceeds when he filed for bankruptcy. It thus provides little support for the proposition that apportionment is appropriate in these circumstances.

In *Rau*, the Ninth Circuit faced a debtor, Ryerson, whose contract provided that, in the event he ceased working for his employer and had not committed misconduct, he would receive a "contract payment." *Rau*, 739 F.2d at 1424. The debtor filed for bankruptcy in February 1981, but did not cease working, and thus did not receive the "contract payment," until November of that year. *See id.* Ryerson then sought a declaratory judgment that the sum was not the bankruptcy estate's property. *See id.* at 1424–25.

The Ninth Circuit rejected the argument that, because Ryerson had not been terminated on the petition date, the "contract value" was not an enforceable interest of the debtor. *See id.* at 1425. Instead, the *Rau* court reasoned that the debtor had a legally-recognized interest in the "contract value" as of the petition date, because he could have terminated his employment then and demanded the sum. *See id.* Any part of the "contract value" that was attributable to Ryerson's post-petition work, however, was not estate property because he would have had no legally-recognized interest in it as of the petition date. *See id.* at 1426.

Thus did the Ninth Circuit gives its imprimatur to apportionment, but only to the extent that it would allocate funds to the estate in which the debtor had cognizable rights as of the petition date. Here, Debtor had no discernible right to his bonus check as of the petition date. Accordingly, even if this Court were to adopt the reasoning underlying *Rau*, it would not be compelled to apportion Debtor's bonus dividend.

The *Wu* court, citing *FitzSimmons* and *Rau*, concluded that apportionment was appropriate in a case in which the debtor had to perform post-petition services to obtain payment; *i.e.*, it applied apportionment to a property interest in which the debtor had no enforceable claim on the petition date. This Court has analyzed *FitzSimmons* and *Rau*, concluding that neither case requires such a result. Because the *Wu* court seems to have based its rationale on defective premises, this Court does not find *Wu* to be persuasive regarding the issue of apportionment.

The plain text of § 541(a)(1) does not allow for apportionment, and apportionment would be contrary to Congress's intent. What authority there is to the contrary, moreover, is unpersuasive. The Court may not, therefore, apportion Debtor's bonus dividend. *See Vogel*, 57 B.R. at 336–37; *cf. In re Rundlett*, 153 B.R. 126, 133 (S.D.N.Y.1993) (refusing to apportion proceeds received post-petition).

This Court holds that the bankruptcy court committed an error of law when it ruled that a bonus, or portions thereof, given to Debtor by his employer post-petition, which was declared post-petition, for which eligibility to receive the bonus required post-petition employment as a condition, and for which the Debtor would not have been eligible, or have had any enforceable claim to, as of the petition day, is property of the estate under 11 U.S.C. § 541.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that the court below is **REVERSED** and that Trustee will transfer the $11,331.63 in bonus-dividend funds that it holds in escrow to Debtor within seven days of receipt of this order.

**SO ORDERED.**