# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 12-6054

_____

In re: Michelle Ann Klein-Swanson, As surety for Yarn Café Inc.; Scott Lawrence Swanson, As surety for Yarn Café Inc.

*Debtor*s

-------------------------------

Randall L. Seaver, Trustee

*Plaintiff - Appellee*

v.

Michelle Ann Klein-Swanson

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 21, 2013
Filed: March 22, 2013

_____

Before FEDERMAN, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Michelle Ann Klein-Swanson (the "Debtor") appeals from a judgment[1] of the bankruptcy court: (a) revoking the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(2);[2] (b) avoiding the transfer under 11 U.S.C. § 549 of bonus funds she received postpetition from her employer and entering judgment for recovery of those funds by the Chapter 7 trustee, Randall L. Seaver (the "Trustee"), pursuant to 11 U.S.C. § 550; and (c) granting a motion for costs filed by the Trustee pursuant to Federal Rule of Bankruptcy Procedure 7054(b). We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

## ISSUE

The central issue in this appeal is whether bonus payments received postpetition by the Debtor from her employer were property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541. Because we hold that the bonus payments were not property of the Debtor's bankruptcy estate, we must reverse the bankruptcy court's: (a) revocation of the Debtor's discharge under 11 U.S.C. § 727(d)(2);[3] (b) avoidance of the transfer of the bonus funds under 11 U.S.C. § 549

---

[1]     In her Notice of Appeal, the Debtor states that she also appeals from a July 2011 order granting summary judgment. The summary judgment order was not a final order. Rather, the decision reached in that order was incorporated into the bankruptcy court's judgment of September 20, 2012.

[2]     The bankruptcy court's judgment erroneously cites 11 U.S.C. § 707(d)(2), rather than 11 U.S.C. § 727(d)(2), with respect to revocation of the Debtor's discharge, which we consider to be a typographical error.

[3]     The bankruptcy court discussed various omissions and misstatements that it believed the Debtor made on her Schedules and Statement of Financial Affairs other than the Debtor's failure to disclose the bonuses from her employer. However, the Trustee's Complaint speaks only of the bonuses and the Trustee conceded as much at trial when his counsel said "[n]ow, we're only seeking and I think we made this clear to revoke based upon her concealment of the two bonuses and failure to

and recovery of those funds under 11 U.S.C. § 550; and (c) granting the Trustee's motion for costs under Federal Rule of Bankruptcy Procedure 7054(b).

## BACKGROUND

On January 19, 2009, the Debtor (together with her husband) filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). In April 2009, an order was entered granting the Debtor and her husband a Chapter 7 discharge.

The Debtor has been employed by International Business Machines ("IBM") since 1996, and she continued to be employed by IBM on the petition date. In October 2007 the Debtor changed her position at IBM to become the Client Executive for Oracle Alliance.

On the petition date, the Debtor was eligible to receive bonuses under two IBM programs: (a) the Excellence Award; and (b) the Growth Driven Profit ("GDP") program. IBM determined bonuses using a calendar year. The bankruptcy court made extensive findings of fact, many of which are not relevant in light of our decision that the IBM bonuses were not property of the Debtor's estate. We set forth only those facts that are relevant to our decision.

The Excellence Award was a quarterly bonus program whereby, each quarter, IBM was permitted to allocate funds for Excellence Awards to work teams. The team supervisor was then charged with deciding, based on each member's performance during the quarter, how much, if any, of the Excellence Award funds for her team

---

disclose and failure to pay them over. The other things that we talked about, the eight or nine or ten things, were all introduced to establish the requisite fraudulent intent." The bankruptcy court discussed the Debtor's other omissions and misstatements to demonstrate the Debtor's fraudulent intent regarding the bonuses, and it revoked the Debtor's discharge solely based on the Debtor's conduct with respect to the bonuses.

would go to each member. The decision to make an award was entirely within IBM's discretion. No member of the team was guaranteed an Excellence Award. The supervisor announced the awards after the close of the calendar quarter and, through the regular payroll process, IBM paid the bonuses about sixty days after the close of the quarter. In February 2009 (postpetition), the Debtor received an Excellence Award in the amount of $8,000 for work she had performed during the fourth calendar quarter of 2008.

In addition to the Excellence Award, the Debtor also received a GDP bonus. In March 2009, the Debtor received the GDP program payment of $16,072 for the year 2008. IBM based GDP bonus payments on the "personal business commitment" of an employee (an employee performance metric used by IBM) and IBM's year-over-year profit and growth. IBM usually paid these bonuses about sixty days after the January announcement of its operating results from the year. Like the Excellence Award, the decision whether to make a GDP program payment was in the complete discretion of IBM: the GDP program documents state that "[n]o employee earns or otherwise becomes entitled to payment, or any portion of a payment, under the GDP program prior to payment by IBM."

Prior to filing her bankruptcy petition, the Debtor had completed all tasks within her control toward obtaining an award under either of the bonus programs. However, the awards to the Debtor of the Excellence Award and the GDP bonus were within the complete discretion of IBM; IBM had the right to decide it would not make any award to the Debtor under either program. No evidence indicated that IBM decided to make the awards to the Debtor prior to the petition date. And the Debtor was not notified that she would receive a payment under either program until after she filed her bankruptcy petition.

The Debtor did not disclose her eligibility for or any interest in the Excellence Award or a GDP bonus in her bankruptcy Schedules or Statement of Financial

Affairs. Although the Debtor was notified that she would receive, and she had already been paid, the $8,000 Excellence Award by the time of her § 341 meeting of creditors, she did not bring this to the attention of the Trustee. After the § 341 meeting, the Debtor received the GDP bonus. After her § 341 meeting, the Debtor engaged in communications with the Trustee regarding her receipt of the Excellence Award for the fourth quarter of 2008, but she did not mention the GDP bonus to the Trustee.

The Trustee brought an adversary proceeding against the Debtor, asserting five counts in his Complaint: Count I was a state law claim for conversion of the two bonus payments; Count II was a state law civil theft claim; Count III was withdrawn before trial; Count IV was a claim for avoidance and recovery under Bankruptcy Code §§ 549 and 550 based on the Debtor's alleged postpetition transfer of the IBM bonuses to herself; and Count V sought revocation of the Debtor's discharge under Bankruptcy Code § 727(d)(2).

Through a July 2011 order, the bankruptcy court granted partial summary judgment. As stated by the bankruptcy court in its "*Findings of Fact, Conclusions of Law, and Order for Judgment on Counts Four and Five and Report and Recommendation on Counts One and Two*" (the "Findings and Order") issued after trial, the court's grant of summary judgment "held that the bonuses were contingent interests, received for work completed prepetition, and were thus property of the bankruptcy estate under 11 U.S.C. § 541(a)(1)."[4] In its Findings and Order, the bankruptcy court ordered that: (a) pursuant to § 727(d)(2), the Debtor's discharge would be revoked (Count V); and (b) pursuant to §§ 549 and 550 (Count IV), the Trustee could recover from the Debtor the value of the two bonuses. The bankruptcy

---

[4] Sections 541(a)(6) and(7) were also discussed in the summary judgment pleadings.

court issued a report and recommendation to the District Court on Count I (state law conversion) and Count II (state law civil theft).

Upon the motion of the Trustee, the District Court dismissed Counts I and II of the Complaint, quoting the bankruptcy court and stating that such dismissal had no effect on the determination that "the bonuses in the amount of $24,072 received postpetition by Defendant Michelle Ann Klein-Swanson are property of the bankruptcy estate," and it remanded the action to the bankruptcy court for entry of judgment on Counts IV and V. Thereafter, the bankruptcy court issued a single document entering judgment against the Debtor under Counts IV and V, and granting a motion by the Trustee for costs under Federal Rule of Bankruptcy Procedure 7054(b).

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002) (citations omitted). "Whether property is included in the bankruptcy estate is a question of law." *Id*. (citing *Ramsay v. Dowden (In re Cent. Ark. Broad. Co.*), 68 F.3d 213, 214 (8th Cir. 1995) (citation omitted)); *Law v. Stover (In re Law)*, 336 B.R. 780, 781 (B.A.P. 8th Cir. 2006). The bankruptcy court's grant of summary judgment is reviewed *de novo*. *Paul v. Allred (In re Paul)*, ___ B.R. ___, 2013 WL 709562, at *2 (B.A.P. 8th Cir. Feb. 28, 2013) (citing *Peter v. Wedl*, 155 F.3d 992, 996 (8th Cir. 1998)).

## DISCUSSION

### I.    11 U.S.C. § 541(a)

Section 541 of the Bankruptcy Code defines property of a debtor's bankruptcy estate broadly to include generally "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Also included

in the definition of "property of the estate" are: "(6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case" and "(7) [a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(6) and (7). The party seeking to include property in the estate bears the burden of showing that the item is property of the estate. *DeBold v. Case (In re Tri-River Trading, LLC),* 329 B.R. 252, 263-64 (B.A.P. 8th Cir. 2005), *aff'd* 452 F.3d 756 (8th Cir. 2006).

"The legislative history of the 1978 Bankruptcy Code makes clear that despite the broad scope of § 541, it 'is not intended to expend [sic] the debtor's rights against others more than they exist at the commencement of the case.' " *Vote*, 276 F.3d at 1026 (quoting S. Rep. No. 95-989, at 82, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.).

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *Reagan v. Regions Bank (In re Wetzel)*, 649 F.3d 831, 834-35 (8th Cir. 2011) ("While federal law controls whether the interest is property of [the debtor's] bankruptcy estate, [state] law defines the nature and extent of that interest.") (citations omitted).

## A. 11 U.S.C. § 541(a)(1)

The Trustee claims that (as the bankruptcy court determined), at the commencement of the Debtor's bankruptcy case, the Debtor had a contingent interest in the IBM Excellence Award and GDP bonus, rendering such payments property of the Debtor's estate. We disagree. As of the petition date, the Debtor had no interest (contingent or otherwise) in the payments from IBM because IBM had the absolute discretion to decide that it would not make an award to the Debtor under either of its programs. The Trustee asserts that the estate had a contingent interest in the bonuses

because the Debtor's receipt of such bonuses came from the Debtor's prepetition services and IBM bonus programs that were in place prepetition. The Trustee also notes that the Debtor was eligible for the bonuses on the petition date. But IBM did not exercise its discretion to award the bonuses until postpetition and, as of the petition date, the Debtor had nothing more than a hope or expectation that she would receive the payments. The awards were made postpetition and they rightfully belong to the Debtor.

According to the Trustee, the contingency that existed on the petition date was IBM's exercise of its discretion to make awards to the Debtor. But before IBM actually exercised its discretion postpetition, the Debtor had no interest in either bonus pool. Therefore, according to the Trustee's logic, on the petition date the Debtor would have had a contingent interest in nothing.

Under Minnesota law, no offer has been made by an employer and an employee has no contract for funds under an employer's award program, when the employer maintains the right to decide in its sole discretion whether it will award such funds to the employee. *See Chambers v. The Travelers Cos., Inc.,* 764 F. Supp. 2d 1071, 1087 (D. Minn. 2011); *aff'd* 668 F.3d 559, 565-66 (8th Cir. 2012); *Grenier v. Air Express Int'l Corp.,* 132 F.Supp 2d 1198 (D. Minn. 2001). The Trustee has shown no basis for the proposition that the Debtor had a legal or equitable interest in the bonuses as of the petition date. He cites *Blacque v. Kalman,* 30 N.W.2d 599 (Minn. 1948), as support for his belief that the Debtor had a contingent interest in the award payments from IBM as of the petition date. The *Blacque* court decided whether the purpose of creating a testamentary trust had been fully accomplished in light of the interests of contingent beneficiaries. We do not interpret that case to define whether the Debtor had an interest, contingent or otherwise, for the purposes of this appeal.

The facts that: (a) the payments from IBM to the Debtor were based on her prepetition employment; (b) the bonus programs existed on the petition date; and (c)

the Debtor was eligible for the bonuses on the petition date, do not render the bonus payments property of the Debtor's bankruptcy estate. In *Drewes v. Vote (In re Vote)*, 276 F.3d 1024 (8th Cir. 2002), Mr. Vote (a farmer) had "no interest of any kind" in government compensation for crop loss as of the petition date. *Id.* at 1027. Rather, after Mr. Vote filed his bankruptcy petition, Congress passed a law that provided assistance to farmers and Mr. Vote received payments from this program that were for his prepetition crop losses. *Id* at 1026. The court held that the payments received by Mr. Vote were not property of his bankruptcy estate.[5] *Id.* at 1026-27.

The trustee in *Vote* argued that the crop loss payments were property of the estate under *Segal v. Rochelle*, 382 U.S. 375 (1966). *Id.* at 1026. The bankruptcy court and the Trustee in this case also rely on *Segal*. In *Segal*, the Supreme Court held that a tax refund loss-carryback claim was included in property of the debtors' estates where the losses occurred prepetition and the taxes for the carry back years had been paid, but the refund could not be claimed until postpetition under the applicable tax laws. *Segal*, 382 U.S. 375. The Court in *Segal* stated "[t]urning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' . . . ." *Id.* at 380. As stated by the *Vote* court "[i]n *Segal*, the Court held that the debtor had an existing interest in a tax refund and found that the debtor's interest in a loss carryback under the tax code was 'sufficiently rooted in the pre-bankruptcy past' to be included as property of the estate." *Vote*, 276 F.3d at 1026 (quoting *Segal*, 382 U.S. at 380).

The *Vote* court distinguished the facts in that case from the facts in *Segal*. It noted that the applicable law in *Segal* was in place on the petition date and, therefore, the *Segal* debtors had an "existing interest" in a tax refund on the petition date. *Vote*,

_____

[5] The *Vote* court also rejected an argument by the Trustee made under § 541(a)(7). We discuss § 541(a)(7) in more detail below.

276 F.3d at 1026. In *Vote*, the relevant law had not been enacted as of the petition date and Mr. Vote had "a mere hope that his losses might generate revenue in the future." *Id.* The *Vote* court found it important that the estate not obtain rights greater than what Mr. Vote held on the petition date. *Id.* ("To find for the trustee on the basis that the payments were 'sufficiently rooted' would allow the trustee to assert more rights than [Mr.] Vote had at the commencement of his case.").

The facts of this case are also distinguishable from those in *Segal*, and reliance by the bankruptcy court on *Segal* 's "sufficiently rooted" test was improper. Even though the *Segal* debtors could not formally make the loss-carryback refund claim under the applicable statutes until a date postpetition, the losses had already occurred and the debtors had an interest in the refund as of the petition date. The tax laws were set and all that was left for the debtors to do was to make the claim. In contrast, the decision whether to make the award payments was completely within IBM's control. Like Mr. Vote, as of the petition date the Debtor had nothing more than a hope that she would receive the award payments from IBM. To consider the payment to be property of her estate simply because it related to her prepetition employment would be to give the bankruptcy estate more than the Debtor had on the petition date.

The bankruptcy court and the Trustee maintain that *Stoebner v. Wick (In re Wick),* 276 F.3d 412 (8th Cir. 2002), *aff'g* 249 B.R. 900 (Bankr. D. Minn. 2000), supports the proposition that the Debtor's IBM bonuses were property of the estate. As part of the sale of Ms. Wick's company, Ms. Wick had the option to require the company to issue to her shares of the company's stock after she remained an employee of the company for one year post-sale. *Id* at 414. Ms. Wick filed her Chapter 7 bankruptcy petition four months into the one-year period. *Id* at 413. The Eighth Circuit noted that "[t]he parties agree that upon filing Ms. Wick's options became property of her bankruptcy estate." *Id.* at 415. And the court stated that "[t]he fact that the options were unvested and contingent on Ms. Wick's continued

-10-

employment does not alter the fact that they were property of the estate." *Id.* (citing *Allen v. Levey (In re Allen)*, 226 B.R. 857, 865-66 (Bankr. N.D. Ill. 1998).[6]

On the petition date Ms. Wick had an interest in property, as stated by the bankruptcy court, Ms. Wick had "a *contract right* to receive stock in [the company], contingent upon [Ms.] Wick completing one year of employment." *Stoebner v. Wick (In re Wick)*, 249 B.R. 900, 909 (Bankr. D. Minn. 2000), *aff'd* 276 F.3d 412. It did not matter that Ms. Wick was required to perform postpetition services. *Id.* In contrast, the Debtor here had nothing more than a hope that she would receive the bonus payments from IBM. IBM had the complete discretion to decide that the Debtor would receive nothing. *Wick* does not stand for the proposition that the Debtor held an interest that was property of her estate.

Contrary to the belief of the bankruptcy court and the Trustee, *Booth v. Vaughan (In re Booth)*, 260 B.R. 281 (B.A.P. 6th Cir. 2001), is not on point, and it fails to provide support for the proposition that the Debtor held an interest in the IBM award payments that would make such payments property of her bankruptcy estate. Under a profit sharing program, Mr. Booth was entitled to a pay out from his employer as long as, by the end of the calendar year, the employer made a profit and Mr. Booth was still employed. *Id.* at 284. Mr. Booth filed his bankruptcy petition before the end of the calendar year and, postpetition he received a profit sharing payment for the year during which he filed his bankruptcy petition. *Id*. The court ruled that the portion of the profit sharing payment attributable to Mr. Booth's prepetition earnings was property of his bankruptcy estate. *Id*. at 290.

---

[6] The Eighth Circuit's opinion in *Wick* primarily addresses other issues. Under Bankruptcy Code § 541(a)(6), the proceeds of the stock options attributable to Ms. Wick's prepetition services were property of the estate and Ms. Wick was entitled to the proceeds attributable to her postpetition labor. *Wick*, 276 F.3d at 416-17. We discuss § 541(a)(6) in more detail below. *Wick* also addressed an exemption issue.

On the petition date, Mr. Booth held the right to payment provided that the employer made a profit and Mr. Booth was still employed, and the court stated that Mr. Booth's interest was a contingent interest under applicable state law. *Id*. at 284-85. Mr. Booth's employer did not reserve the discretion to decide whether it would make the payment. In contrast, as of the petition date, the Debtor here had no cognizable interest in the payments from IBM; she had only a hope that IBM would exercise its discretion to award the payments.[7]

The Debtor cites to cases where bonuses were not property of the estate when employers maintained postpetition discretion regarding whether to make such awards. *See, e.g., Lewis v. Chappo (In re Chappo)*, 257 B.R. 852 (E.D. Mich. 2001); *Sharp v. Dery*, 253 B.R. 204 (E.D. Mich. 2000); *Vogel v. Palmer*, 57 B.R. 332 (Bankr. W.D. Va. 1986).[8] Based on the *Booth* court's criticism of a statement by the *Sharp* court that "[t]he determinative issue in this case, therefore, is whether Debtor had an enforceable right to receive the bonus check when he filed his petition. . . ." the Trustee claims that cases cited by the Debtor from the Sixth Circuit are "irrelevant" because "the enforceability of a bonus right between an individual and her employer is irrelevant in determining whether a potential bonus is property of the estate." *Booth*, 260 B.R. at 289-90; *Sharp,* 253 B.R. at 207. Notwithstanding the enforceable right issue, the cases cited by the Debtor share the common fact that the employer maintained discretion to decide whether it would make an award to the employee. And for the purposes of this appeal, it is not important whether a debtor's interest must be enforceable on the petition date to be property of the estate. The Debtor had

---

[7]    None of the additional cases cited by the Trustee, or by the bankruptcy court in its Findings and Order, convince us that the IBM bonuses were property of the Debtor's estate.

[8]    We express no opinion regarding the reasoning and decisions made by these courts with respect to other details of the relevant bonuses or employer plans.

*no right to or interest in* the IBM bonuses (enforceable or unenforceable, contingent or otherwise) on the petition date.[9]

### B.      11 U.S.C. §§ 541(a)(6) and (7)

The Trustee argues further that the "entire value" of the award payments is property of the Debtor's estate pursuant to Bankruptcy Code §§ 541(a)(6) and (7). Because we rule that the award payments were never property of the estate in the first instance, it follows that the §§ 541(a)(6) and (7) are inapplicable.

Section 541(a)(6) includes in property of the estate  "(6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."  *See Wick*, 276 F.3d at 416-17 (estate's interest in proceeds of stock option limited to those proceeds attributable to prepetition services of debtor).  The Trustee posits that the bonuses are compensation for prepetition services that were paid postpetition and, therefore, they are included in the estate under § 541(a)(6) in their entirety, and cannot be excluded from the estate as earnings for postpetition services of the Debtor.  However, for § 541(a)(6) to apply, there must exist property of the estate in the first instance (*i.e.,* the bonus payments must have been proceeds of something that was property of the estate).  Because the Debtor had no interest in the Excellence Award and the GDP program payment on the petition date, the money she received from IBM postpetition under these programs would not come into the estate under § 541(a)(6), and it is of no consequence whether they would be excluded as earnings from services performed by the Debtor postpetition under that section.

---

[9]      We are not bound by the *Booth* decision and, because that case is factually distinguishable, we do not opine regarding its holding.  However, to the extent *Booth* could be construed to treat the IBM bonuses as property of the Debtor's estate, we disagree with it.

Under § 541(a)(7), property of the estate includes "(7) [a]ny interest in property that the estate acquires after the commencement of the case." Whether the estate acquired an interest in the award payments begs the question in this appeal; whether the award payments were property of the estate. And the Trustee has not shown how the estate acquired an interest in such funds. *See Vote*, 276 F.3d 1027 (trustee could not show how estate acquired an interest in prepetition crop losses for which the debtor was compensated under legislation enacted postpetition).

## II. The bankruptcy court erred by entering judgment against the Debtor.

In light of our determination that the Excellence Award and GDP program payments were not property of the Debtor's bankruptcy estate, the Trustee is no longer the prevailing party and we reverse the bankruptcy court's decisions under Bankruptcy Code §§ 727(d)(2), 549 and 550 and Federal Rule of Bankruptcy Procedure 7054(b).

Section 727(d)(2) provides, in pertinent part, that a discharge shall be revoked if "the debtor acquired property *that is property of the estate,* or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."[10]  11 U.S.C. § 727(d)(2) (emphasis added). Section 549(a) (the subsection upon which the bankruptcy court relied in its Findings and Order) pertains to the trustee's avoidance of, "a transfer of *property of the estate* . . . ." 11 U.S.C. § 549(a) (emphasis added). Sections 727(d)(2) and 549(a) do not apply because the IBM payments were not property of the Debtor's bankruptcy estate. Likewise, § 550 allows recovery for the estate's benefit of property transferred or its value "to the extent that a transfer is avoided under section . . . 549. . ." There was no transfer under § 549, so § 550 does not apply.

---

[10]     It is noteworthy that the Debtor could have avoided the § 727(d)(2) lawsuit simply by disclosing on her bankruptcy filings the possibility that she might receive payments from IBM.

Federal Rule of Bankruptcy Procedure 7054(b) states that in certain instances "[t]he court may allow costs *to the prevailing party*. . . ." Fed. R. Bankr. P. 7054(b) (emphasis added). The Trustee is no longer the prevailing party and, therefore, the award of costs under Rule 7054(b) is not appropriate.

## CONCLUSION

The decision of the bankruptcy court is REVERSED.

---